ASA L. SHIPMAN, as Surviving Executor, etc., of DANIEL FANSHAW, Deceased, v. ISABELLA G. ROLLINS and Others, Appellants, and Others, Respondents.

*Will — gift to an unincorporated association void — unlawful suspension of the vesting of the absolute title to personal property — right of one, not a party to an action, to avail himself of a decision made therein in his favor.*

One Fanshaw died February 20, 1860, leaving a will by which he directed his executors to sell so much of his real estate as would be sufficient when invested in bonds and mortgages to produce an income of $1,500 a year, which was to be paid to his widow during her lifetime. He also devised to her the use and profits of certain other real estate. Upon her death the rest of this real estate was to be sold, and the fund in the hands of the executors, after deducting certain payments, was to be divided into eight equal parts. After disposing of certain of these portions the will proceeded: "One other portion I give to the American and Foreign Christian Union;" and then in similar language the testator gave one portion to the New York Tract Society and two "to the First Reformed Low Dutch Church that may be built after the year 1856, between the Fifth avenue and the East river and Seventy-ninth and Ninety-fifth streets." At the time of the testator's death none of the aforesaid legatees were incorporated, though all subsequently and prior to the death of the widow became so, and within that time the church described in the will was built within the prescribed districts.

*Held,* that by the terms of the will the legacies given to the said societies vested, if at all, upon the death of the testator.

That as the said societies were then unincorporated the legacies were void.

That the gift to the church could not be sustained as there was no time specified

within which it should be built, and it therefore unlawfully suspended the vesting of the absolute title to the property.

A portion of the interest of a legacy of $9,000, and the principal thereof after the death of three persons named in the will, was given to the Woman's Hospital in the city of New York. In an action, brought by the executor in 1862, the validity of this legacy was questioned and affirmed by the court. The hospital was not a party to that action.

*Held,* that this did not prevent it from availing itself of the former decision in its favor, and that the validity of the legacy could not be again disputed by the executor.

APPEAL from a judgment, entered on the trial of this action at a Special Term.

*S. H. Thayer,* for the plaintiff.

*J. H. K. Blauvelt, James K. Hill, Wing & Shoudy* and *Alfred Roe,* for the appellants.

*H. P. Allen, Charles H. Knox, S. H. Thayer* and *John E. Parsons,* for the respondents.

DANIELS, J.:

The action was brought by the plaintiff as surviving executor of the estate of Daniel Fanshaw, to obtain the direction and judgment of this court for the disposition of so much of the estate of the testator as now remains undistributed and is ready for distribution. The testator died on the 20th of February, 1860, leaving a will with three codicils, which were admitted to probate by the Surrogate of the county of New York. Neither of the codicils require to be specially considered in the examination and decision of the points made in support of the appeal, for they arise upon the provisions and directions contained in the will itself. By the will the executors were directed to sell so much of the real estate of the testator, not specifically devised, as would be sufficient to produce an annual income of $1,500 by investing the proceeds in bonds and mortgages. This annuity was directed to be paid to the widow in semi-annual installments during the period of her natural life. The testator also devised to her for life the use, net income and profits of his residence and nineteen lots and gores of land connected therewith. Any part of the land whose proceeds should be required for the expenses of alterations, repairs, taxes, assessments or other exigen-

cies was allowed to be sold by the executors for that purpose with the concurrence of the widow, and after the time of her decease what should be left of this real estate he authorized the executors to sell and add the proceeds of the sales to the amount invested to produce the widow's annuity of $1,500 a year. From this fund they were directed to pay her funeral expenses and such debts as she might before have contracted, as well as all mortgages at that time standing against himself. What should remain after that of this fund, he directed to be divided into eight equal shares; and it is as to the disposition of four of these shares that the principal controversy in the case has arisen. One of these shares was directed to be given to the American and Foreign Christian Union, another to the New York Tract Society and two others to the First Reformed Low Dutch Church which might be built after the year 1856, between the Fifth avenue, the East river, Seventy-ninth and Ninety-fifth streets in the city of New York. Neither of these societies was incorporated at the time of the decease of the testator. The church was afterwards incorporated on the 15th of November, 1860, the American and Foreign Christian Union on the 13th of May, 1861, and the New York City Mission and Tract Society on or about the 19th of February, 1866.

As voluntary unincorporated associations they were at the time the will went into effect incapable under the laws of this State of taking either of the shares bequeathed by this part of the testator's will. (*White* v. *Howard*, 46 N. Y., 144; *Sherwood* v. *American Bible Society*, 1 Keyes, 561, 567; *Burrill* v. *Boardman*, 43 N. Y., 254–260; *Marx* v. *McGlynn*, 88 id., 371, 376.) If the gift intended to be made of these legacies was immediate and therefore designed to become vested on the decease of the testator, then the directions contained in the will concerning them were inoperative and illegal, and the subsequent incorporation of the societies would not remove this illegality; for if these legacies were not effectually given on account of the incapacity of the societies to take them, then the four-eighths of the fund designed to be given in this manner would remain undisposed of by means of these directions and would vest in the next of kin of the testator; and after having so vested their title could not be disturbed or divested by means of the subsequent action of these societies or associations.

That the right to the enjoyment of these gifts was designed to become vested immediately on the decease of the testator seems to be warranted by the portions of the will including them, for they have been framed in language expressive of no other intention than that of a present unqualified bequest so far as the right to the shares were designed to be affected.

These clauses are in the following language: One other portion I give to the American and Foreign Christian Union formed in the city of New York in the year 1849. The interest to be expended yearly in donations of their publications among the Sabbath school libraries. One other portion I give to the New York Tract Society, founded in the city of New York on the 19th day of February, 1827. The interest thereof to be expended each and every year in the purchase of the American Tract Society's publications. Said works to be distributed among the most depraved part of the population of the city of New York. Two other portions I give to the First Reformed Low Dutch Church that may be built, after the year 1856, between the Fifth avenue and the East river and Seventy-ninth and Ninety-fifth street.

What was to be postponed was the division of the fund into shares and the payment of such shares to the societies for which they were respectively designed. That was deferred on account of the condition in which the estate was left by the will during the life of the widow. The object was to permit the enjoyment by her of that estate, and after her decease to secure the payment of the bequests to the respective legatees; and where that may appear to be the object of the testator, by the language made use of to express his intention, it cannot be restrained or limited in its effect by the circumstance that the bequests are to be paid over at a future period of time and upon the termination of an intermediate estate. The rule upon this subject is that, "if the postponement of payment appear to have reference to the situation or convenience of the estate, as if land be devised to A. for life, remainder to B. in fee, charged with a legacy to C. payable at the death of A., the legacy will vest instanter." Jarman on Wills (5th Am. ed.), 834, and note 1, where it is said that " where payment is deferred either on account of some interest in the subject being given to a person on whose death the gift is to take effect, or some difficulty attending the

collecting the testator's effects, the bequest is considered as independent of the time named, and the legacy is vested at the death of the testator." And this rule will only yield to an expression of a contrary intention on his part. But no such intention has been expressed in, or is to be implied from, the terms of this will. On this subject it was held by DENIO, C. J., *In the Matter of New York Public School* (31 N. Y., 574, 589) that, "the general, if not the universal rule is, that where there is a person in being in whom the estate in remainder would vest in possession, if the precedent estate should immediately terminate, it is vested in interest, though it may not be certain that such person will be living or qualified to take at the actual cessation of the prior estate." And in *Betts* v. *Betts* (4 Abb. N. C., 317, 387) the rule was again clearly repeated "that when legacies are payable in the future without condition annexed or any expressed intention of the testator to the contrary, whether they are of personal property or of real estate, directed to be sold to discharge them, they vest at the death of the testator." And *Sweet* v. *Chase* (2 Comst., 73); *Loder* v. *Hatfield* (71 N. Y., 92, 100); and *Warner* v. *Durant* (76 id., 133), maintain the same principle. Its application is not prevented by the circumstances that the fund for the payment of the legacy may be directed to be derived from both real and personal property, or from real estate, for the intermediate period devoted to the use, benefit or enjoyment of another person or persons. Upon this subject it was held in *Manice* v. *Manice* (43 N. Y., 303) that, "it may be laid down as a general rule that where by a will, shares or interests in real or personal estate, to be ascertained by a division, are given, or where the real estate is directed to be sold and the proceeds divided, the estate or interest of the devisee or legatee in the property to be divided or converted is a vested interest, before the conversion or division, and that limitations over, to take effect in case of the death of those first designated prior to the division or sale, must be held to refer to the time appointed for the division or sale, and not to the period of their completion, unless the language of the will clearly and unequivocally expresses an intention that the vesting shall be postponed until such completion." * * * "A similar rule is applied to gifts of shares or legacies to be paid out of a fund or surplus, to be collected in or ascertained and divided, and in those cases the interests of the

legatees are held to vest absolutely before the fund is collected, or the surplus ascertained, or, division actually made, and it is held that a limitation over, to take effect in case of the death of the legatee before he has received his share, does not take effect if the legatee lives to become entitled to it though he die before it has been. paid." * * * "And this rule was applied in its full force to the case of a mixed fund of realty and personalty." (Id. 368, 369).

These authorities very clearly maintain the propriety of the construction already placed upon the portions of the testator's will now in controversy in this action. Under the rule prescribed and supported by them the shares of this part of the testator's estate directed to be.given to these societies would have vested immediately upon his decease, if they had been such bodies as under the laws could have taken these interests. But as they were only voluntary associations, and no valid trust for their benefit was in any form created, the legacies failed to vest on account of the legal incapacity of the societies to take them, and the right to the funds accordingly, as well as necessarily, vested in the next of kin of the testator living at the time of his decease. The directions given for the payment of these legacies differed from that which was sanctioned in *Burrill* v. *Boardman* (*supra*) allowing the gift to remain in abeyance until the corporation was formed which was designed to receive it, for the body was required to be incorporated .within a period of two years next after the decease of the testator, and before the expiration of two designated lives referred to for that purpose, while these directions provided for no such occurrence and were made depending upon no event whatever of that description.

If the bequest designed for the Reformed Low Dutch Church should be held to be contingent upon the event that a church edifice should be built after the year 1856, within the bounds mentioned by the testator, it would not promote the interests of this society. The society itself was formed as a voluntary association by the action of the testator and others in January, 1860. Before that he had been a member of another religious organization of the same order, located in Harlem, and known as "The Reformed Low Dutch Church of Harlem," in the Ninth ward of the city of New York; and from the fact of his joining this association, and the direction

for the payment of these two shares to the church mentioned by him, it is to be inferred that he took an active interest in the organization and prosperity of the new society. But at the time of his decease this society had neither built a church within the prescribed bounds, nor had it become incorporated as a religious corporation. It did complete a church edifice shortly after the decease of the testator. That was dedicated on the 25th April, 1860; but neither this completion, nor the subsequent incorporation of the society, would entitle it to these shares, even if the gift was not designed to take effect until one or the other of these events should arrive, for there was no limited time within which the church was required to be built; or if the phrase made use of was designed to refer to the incorporation of the society, the time within which that should be made was in no manner indicated in the will. But it was left indefinite only to be terminated by the occurrence of the event which the testator contemplated, and that was to take place after the year 1856. How soon after was a subject upon which no intimation was given. It might, therefore, be within the succeeding five years, as the fact itself was shown to have taken place, or under this indefinite language the event might not take place for 100 years, or any other longer assignable period of time; for that reason there was at least a possibility that this contingency would not arise within the lives of any two persons in being at the decease of the testator. And it was not limited in any form upon the lives of persons as that has been required by the statute to render such a limitation lawful. (2 R. S. [6th ed.], 1167, §§ 1, 2.) *Burrill* v. *Boardman* (*supra*, 259), where it was held that "the title to personal property must vest absolutely within two lives in being. A possibility of suspension beyond that for any time, however short, is fatal." In any view which may be taken of the direction given for the payment of this bequest there was a possibility, if it is held to have been contingent, that the title to it would not become vested in the legatee by reason of the building of a church or the incorporation of the society within this prescribed period of two lives, and it must therefore be held to have been an unlawful direction within the rule just mentioned.

Neither the bequest of the share to the American and Foreign Christian Union, nor New York Tract Society, or of the two shares

to the First Reformed Low Dutch Church, can be sustained as legal dispositions of these portions of the testator's estate. Upon his decease, therefore, the right to these portions of the fund became vested in the next of kin, as they do not appear otherwise to have been disposed of by the terms of the will or either of the codicils, and the widow having died in July, 1882, they should be directed to be distributed as the one-eighth is by the judgment which the testator by his will did not undertake to dispose of.

The right of the Woman's Hospital, in the city of New York, to a portion of the interest of a legacy of $9,000, and the payment of the principal after the decease of the testator's sister-in-law and daughter-in-law, and a sister has also been drawn in question by the appeal. It was directed to be finally paid over after these three persons had departed this life, and the right of the executor to pay it, and of the hospital association to receive it, is resisted upon the ground that the ultimate payment and vesting of the principal of the legacy were fixed for too remote a period to allow it to be lawfully done under the laws of the State. But it appeared that an action was brought by the executors soon after the decease of the testator, which was decided in 1862, in which the obligation of the executors to pay the legacy to the Woman's Hospital Association was drawn in question, and the court then determined that it was a valid bequest to the corporation which was formed by an act of the legislature passed on the 18th of April, 1857. This corporation or association was not made a party to the action, and for that omission it is objected that the judgment in that action is not obligatory upon the executor. The point taken is that as it would not have bound the hospital association, if the decision had been against the legality of the bequest, that it cannot take advantage of a decision made sustaining this bequest. But this result by no means follows, for the hospital association claims and endeavors to avail itself of the benefit of this decision. It practically comes in under the judgment and claims the benefit of this determination in its favor. This circumstance very materially distinguishes the position of the association from that in which it would stand if the decision had been adverse, and it objected to its effect because it had not been a party to the action in which the decision was made. The association would be in a condition to take the advantage of such an objection, but that

is not the nature of its present relation to the controversy. For it has not only omitted to make any objection, but it has accepted the result of this determination. And as that is the position of the Woman's Hospital Association, the other parties to the action are not in a position in which they can object that the judgment was not binding upon it. The association has accepted its binding obligation as fully and completely as though it had been a party to the action. The other persons urging this objection in support of their appeal were all of them parties to the suit in which this determination was made, and as between them the court having jurisdiction over them decided this to be a valid bequest; and from that circum_ stance it follows that the Hospital Association became entitled to receive it. This judgment is conclusive upon the surviving executor who was one of the plaintiffs in the action, and also upon the next of kin of the testator who were made defendants in it. Between them it was a direct adjudication upon a point presented to the court that this was a valid bequest to the association. It in effect operated upon so much of the estate in the hands of the executors as to render it their duty to hold it for the ultimate benefit of the association, and to pay it over according to the directions given for that purpose by the testator. This judgment is obligatory to this extent upon the surviving executor. And is not only an authority, but it renders it his duty, to pay over the bequest as that was directed by the testator. And as the right of the legatee to receive it was adjudged against the persons now denying it, they cannot intercept the execution of the judgment by taking the objection which the law reserved alone to the Hospital Association itself, and that association has declined to make it, that it was not a party to the litigations in which this direction was given.

These observations also constitute an answer to the exceptions filed by the defendant, Daniel Fanshaw, denying the right of the surviving executor to credit for a portion of the interest paid upon this legacy to the Hospital Association. For as its right to the principal of the legacy itself must be maintained upon the effect the judgment already mentioned is entitled to have, the payment of the interest also requires to be sanctioned.

For the purpose of the distribution of the property it was directed by the testator to be converted into money. That conversion in the

first instance for the creation of a fund to supply the annuity of $1,500 given to the widow, and finally for the sale of the real estate reserved for her benefit for life, after her decease. As to three of the eighths ot that fund the directions given were in entire accordance with the law, and it was necessary that the real estate should be converted into money to dispose of those three eighths as the testator had directed that to be done. That fully authorized the conversion of the real into personal estate and left a residue of five eighths to be distributed as personal estate. As to four of these eighths that cannot be done as it was directed by the will of the testator. But the fund created in this manner under his authority is to be distributed as that is required to be done by the laws of this State. The judgment from which the appeal has been taken should be so far reversed as it directs the payment of the four eighths of the fund claimed by the American and Foreign Christian Union, the New York Tract Society, and the Reformed Dutch Church. A direction should be inserted or added for the distribution of these shares conformably to the views already expressed. In all other respects the judgment should be affirmed, with taxable costs payable out of the estate to the several parties represented upon the argument of the appeal.

DAVIS, P. J., and BRADY, J., concurred.

Judgment modified as directed in opinion, and affirmed as modified, with costs to all parties appearing out of the estate.