Allen, J.
The only parties represented upon this appeal, or so far as appears, in the action, are the executors of the will of Dr. Creighton, who are plaintiffs, and Mr. and Mrs. Mead, of the defendants, the latter being one of the heirs and next of kin to the testator, whose interests are adverse to the questioned trusts; and the former, her husband, being one of the executors, expressing a desire to carry the will into execution, and both, by their joint answer, submitting the questions involved to the adjudication of the court. It is true that the defendants named appeal from the judgment of the court *336 below affirming the trusts, and insist, by their counsel here; that the trusts are invalid, and that the property mentioned in the clauses of the will creating the trusts is undisposed of, and goes to the right heirs of the testator.
Mr. Morgan and Mr. Holmes, two of the plaintiffs, are trustees, whose right to take is assailed, as well as executors, but they appear only as executors, and do not assume to represent the trustees or the trust interest; and Mr. Mead, one of the defendants, is also an executor as well as trustee, but he does not represent the trusts, or even assert their validity, and has appealed from the judgment establishing them, hieither in the complaint nor answer are the trusts and the title of the trustees asserted or alleged in any way. Messrs. Merrit and Wright, the two other trustees, are named as defendants in the title of the action. It does not appear that they were served with process, or have appeared in the action, or that they have renounced the trust.
The proceeding, so far as the rights of the trustees and the trust itself are concerned, is ex fa/rte ; that is, the actual litigants, those interested in litigating the claim of the heirs-at-law and next of kin, are not before the court. Whether the widow of the testator was made a party to the action by service of process, or an appearance, so that she will be bound by the judgment, does not appear. It is doubtful whether a judgment upon a record so defective as to parties will conclude any one. But as the case has come, to us by regular process, and has passed through all the tribunals in proper order, without objection, and the interest of the trustees has been ably presented by eminent counsel, acting nominally for the executors, but in fact in support of the trusts, the questions will be considered as if the trustees were formally represented.
The question long controverted and the subject of frequent discussions in the courts of this State, and which has exercised the best minds upon the bench and at the bar, whether the law of charitable uses, as it existed in England at the time of the revolution, and the jurisdiction of the Court of *337 Chancery over the subject, became, upon the adoption of the Constitution of 1777, and still continues to be the law of this State, notwithstanding our statute of “ Uses and Trusts ” and our laws against perpetuities, is directly presented by this appeal.
All the learning upon this branch of the law, as well as the reasons which have led learned and astute judges to different conclusions, appear in the reported decisions of the courts of this State, commencing in 1844 with Shotwell v. Mott (2 Sandf. Ch. R., 46), in which Vice-Chancellor Sakdeobd held in favor of the doctrine that the Revised Statutes, relative to uses and trusts, do not apply to charitable uses, and upon the same review of the history of the law in England and of the statute of 43 Eliz., as affecting the jurisdiction of the Court of Chancery over such uses, and for the same reasons which have since led other judges to the same results. The germ of the whole discussion is found in Shotwell v. Mott, and the views of the vice-chancellor were followed and sustained by great research, and an able argument of the late Judge Debió, who may be said to be the leading champion of this doctrine, in Williams v. Williams (4 Seld., 525). All that can be profitably said or suggested in favor of the existence of the law of charitable uses in this State, is well and forcibly said by the two judges named. The doctrine has never been accepted by the profession and the courts as the recognized law, but has been vigorously opposed, and its opponents have never lost an opportunity of resisting its incorporation into th¿ body of the law as settled by the adjudications of the courts.
Three of the eight judges who participated in the decision of Williams v. Williams dissented from the judgment. The intimation of the chancellor, in Potter v. Chapin (6 Paige, 639), is against the validity of a trust of real estate except as authorized by the Revised Statutes, by which, he says, “ all general trusts are abolished.” ¡No decision of this court since Williams v. Williams has sanctioned the principles of that case, as applied to charitable uses; but, on the contrary, it has been *338 in terms disaffirmed and overruled, and the weight as well as the current of authority is now the other way, and to the effect that there can be no trusts of realty, except such as are permitted by the Revised Statutes. (1 R. S., 727, § 45 ; id., 728, § 55.) The cases in this court, as well as in other courts, are well and ably considered by Judge Porter in Bascom v. Albertson (34 N. Y., 584), and the whole question as to the law in this State in respect to charitable uses thoroughly examined. In that opinion, and the cases referred to by the learned judge, it is very satisfactorily demonstrated that the system of charitable uses, as recognized in England, has no existence in this State; that the courts cannot establish or sustain a trust or use which is not within our statute of uses and trusts; in other words, that the statute relative to uses and trusts is general, and contains no saving clause in favor of charities. It would be a work of supererogation to go over the ground again at this time. The opinion of Judge Porter was adopted by seven of the eight judges of the court, and we recognize the case as a correct exposition of the law in this respect, and that they are not saved by implication. It is proper to state that the reporter misapprehended the intimation of the chief judge in Burrill v. Boardman (43 N. Y., 263). It was only intended to say that, in the view of the court, the question of charitable uses, which had been argued at great length by the counsel, was not in that case. It was not intended to intimate that it was an open question.
Should it be conceded that at the adoption of the State Constitution, in 1777, the English system of charitable uses became the law of this State, as a part of the common law of England, and forming in part the law of the colony on the 19th of April, 1775, it was liable to be repealed or altered by the legislature; and the sweeping provisions of the Revised Statutes, abolishing all uses and trusts, except those specially named, are sufficiently general and comprehensive to include all charities, and if these are saved, it must be by some exception expressed in or implied from the terms of the statute itself.' Courts are not at liberty to introduce an excep *339 tion into an act which the legislature has not thought proper to declare.
Charities and charitable trusts have been favored by courts; and sometimes, as it was suggested by the lord chancellor in College, of St. Mary, etc., v. Attorney-General (6 House of Lords Cases, 189), leading to great hardship and injustice to other interests. The language of the act is: “Uses and trusts, except as authorized and modified in this article, are abolished.” (1 R. S., 727, § 45.) Charitable uses . are not authorized by or referred to in the article; and, in order to save a trust for charity or any pious use, the exception enacted by the legislature must be enlarged by inserting in a proper place and in proper terms “ charitable uses,” as exempt from the operation of the act.
The statute abolishes all uses and trusts, and thus leaves the courts no discretion. All trusts, except those specifically saved, are grouped together and prohibited. The trusts retained are four in number, and are active trusts for special, temporary purposes in the interest of individuals. They do not include perpetual trusts for charity, or for the benefit of classes or of corporations. It is no answer to say that the statute of uses and trusts relates to private trusts; for that only proves that. the legislature did not intend to permit public and general trusts. In the statute of wills, the statute of uses and trusts and the statutes against perpetuities, the legislature has effectually guarded against the abuses which have prevailed in other countries, and has rendered it impossible to withdraw, for any length of time, property, either real or personal, to any considerable amount, from circulation and use by the people by putting it into dead hands, or placing it for indefinite accumulation. Trusts for individuals can only be created for a special purpose and for a limited time, measured by the lives of persons in being at the time of their creation. A devise to a corporation is prohibited, . except in eases where by the law of its creation, or some other law of the, State, the particular corporation is authorized to take by devise; and corporations can only take and *340 hold property to the amounts and for the purposes prescribed by their charters or acts of incorporation; and to this extent each act of incorporation is a dispensation in favor of the particular corporation, in respect of the prohibitions of the statute against perpetuities. But for this dispensation; which is in effect a repeal pro tamto of the statute against perpetuities, grants of property to charities or charitable corporations, for their general purposes, would be incompatible with the statute against perpetuities, for the reason that every such grant implies that it is to be held in perpetuity for the purposes of the grantee; and a sale or transfer would only be justified by special circumstances. (College of St. Mary, etc., v. Attorney-General, 6 House of Lords Cases, 189.)
By the statute of wills (2 R. S., 57, § 3) a devise to a corporation is declared void; and thus the incapacity of a testator to devise and of a corporation to hold, except as specially authorized, concurring, the prohibition is complete; and, as the law will not permit that to be done indirectly which cannot be done directly, the corporation cannot have the benefit of a use in property which it could not take directly by devise.
The view now taken of the construction and effect "of the general statutes of uses and trusts is supported by the authority of the English courts. Prior to the statute 3 and 4 Wm. IY, chap. 27, charities were saved in equity from the operation of the statutes of limitations as highly favored trusts. Laches were not imputed to a charity; and, in such cases, courts of equity did not act in analogy to the statutes of limitation as they did in other cases. By sections 24 and 25 of the statute of 3 and 4 Wm. IY, which was a general statute of limitations of actions, as to real property, the time of commencing actions and suits upon an equitable title was limited, and the time specified at which the right of action in favor of a cestui que trust should be deemed to have accrued when land or rent should be vested in a trustee upon an express trust, and should have been conveyed to a bona fide purchaser for a valuable consideration. This statute, as *341 dealing generally with all equitable rights, and having no saving clause in favor of charities or charitable uses, is held to apply to express trusts of all kinds. The courts regard the statute as mandatory, and give it effect according to its terms, rejecting the idea that they can ingraft upon it exceptions not enacted by the legislature. (Commissioners of Charitable Donations v. Wybrants, 2 Jones & Latouche, 182; College of St. Mary Magdalene v. Attorney-General, supra.) The devise of the two parcels of land in the codicil of- October, 1863, to trustees upon the trusts expressed is void, and the trustees took no title to or interests in the lands; the trusts hot being authorized by the laws of the State.
The devise is to five trustees to have and to hold during the life of two of them, and the survivor of the two named •upon the trust declared, and upon the death of the longest liver of the two, to convey to any trustees who may be authorized by any act of the legislature to take and to hold the property for the same purposes, and in case no such act of the legislature is then in force, to convey the same to the rector, wardens and vestrymen of St. Mary’s church, Beechwood, if such church shall be incorporated under any act of the legislature, and if there be no such incorporation then the said premises to go to the right heirs of the testator. There has been no act of the legislature authorizing any person to take and hold the premises upon the trusts declared, and the church named, so far as appears, has not become incorporated. The trustees named in the will taking no title, they do not and cannot represent any legislative trustee that may be appointed, or any corporation that may be created answering the description of those who are to take at the decease of the longest liver of the two lives named. The person or corporation which should so claim or take title would claim and take, not as successors in interest to the trustees named, or from or through them, but directly under the will, and as purchasers upon the happening of the event upon which their title is to accrue and vest. There are not, therefore, and in the nature of things cannot be, any proper parties before the *342 court, representing the future and contingent trust or estate attempted to be created by the devise, and any judgment that might be given in this action will not conclude any appointee of the legislature or any corporation that may come into existence answering the description of the contingent or executory devisees named in the will. The case is distinguishable from any that have been cited by the counsel, and presents serious questions upon which we ought not now to intimate an opinion. An important part of the scheme of the testator fails by reason of the illegality of the trusts for the life of the two persons named, but whether this necessarily carries with it the entire devise, will, with the other questions, have to be adjudicated when there are those in existence, and parties to the record, who claim in hostility to the right heirs of the testator and under the devise. It is enough that at present there is no person, natural or political, in existence, who can claim against the heirs of the testator. By another clause of the same codicil, the testator bequeathed to the ' same trustees $5,000, to be invested by them in their discretion, the income and interest thereof to be paid annually “in and for the support of the rector, etc., for the time being, of St. Mary’s church, Beechwood, or the support of a clergyman employed as a missionary, or otherwise to officiate, and who shall officiate there,” and concludes as follows: “ And I direct that such income and the said capital sum be paid and transferred, or be disposed of in like manner as the lot of land hereinbefore devised to such trustees is directed to be conveyed or disposed of.” The intent declared is that the five trustees shall retain the fund and execute the trust during the lives of Mead and Wright, and the life of the survivor, and then pass the same over to a trustee, to be appointed by legislative act, or in default of such appointment, to the church should it be incorporated, and if not incorporated, then to the heirs or next of kin of the testator. The validity of this bequest is also challenged by the appellants. The objection is that there is no ascertained or well defined beneficiary of the trust. The trustees are named, and are capable of tak *343 ing, and the absolute ownership is not suspended for a longer period than during the continuance of two lives, and there is no direction for the accumulation of personal property. (1 R. S., 773.) The beneficiary under the trust is the minister officiating at the church named, for the time being. Although the particular individual is not named, he is so described that he is capable of being identified and distinguished from every other human being. There is nothing uncertain or indefinite in the description. A cestui que trust need not necessarily be described by name; any other designation or description by which he may be identified will do as well. The legacy is for the support, that is, for the benefit of the person who shall officiate as the minister of that church, and it is no objection that the individuals may change every year or with every moon. It is not a trust for the benefit of a class undefined and incapable of being ascertained with certainty, but for the benefit of a single individual. It is not material that the legatee should be definitely ascertained and known at the date of the will or even the death of the testator. It is sufficient if he is so described that he can be ascertained and known, when the right to receive it accrues. Where a testator devised certain freehold estates to trustees, the yearly income to be paid to his sister during her life, and after her decease to dispose of and divide the same among the partners of the devisor, who should be in partnership with the sister at her decease, or to whom she might have disposed of her business, it was held a good devise to the persons to whom it was ascertained the sister had disposed of the business during her lifetime. (Stubbs v. Sargon, 2 Keen, 255; affirmed 3 M. & C., 507.) It is lawful to resort to extraneous evidence in regard to the identity of persons. I see no valid objection to the legacy to the trustees upon the trust declared for the period of the two lives named, and without other parties the future disposal of the principal sum cannot be determined. Trusts of personal property are not affected by the statute of uses and trusts, which applies only to trusts in real property. If it should be thought that the legacy was for the benefit or support of the particu *344 lar church-named, so as to make it the beneficiary, or cestui que trust, or that the bequest was for the particular public and pious purpose of securing religious services at a particular place of worship, it might not affect the result. A trust in personal property, which is not in conflict with the statute regulating the accumulation of. interest and protecting the suspension of absolute ownership in property of that character, is valid when the trustee is competent to take, and a trust is for a lawful purpose well defined, so as to be .capable of being specifically executed by the court. (Owens v. Miss Society, 14 N. Y., 380; Beekman v. Bonsor, 23 id., 298; Trustees of Auburn Theological Seminary v. Kellogg, 16 id., 83.) There would be no occasion, in the execution of this trust, to resort to the cypres doctrine of the English Court of Chancery, which has not however been adopted or followed by the courts of this State. But a difficulty suggests itself, which was not considered by .counsel, and in respect to which we have not therefor the aid which their research and suggestions would have afforded. Holding the devise .of the church and glebe lands void, the general scheme of the testator as eliminated and put forth in the codicil, is destroyed. He gives a plot of ground for a church in connection with the Episcopal Church of the United States,-and bearing a specified name, and another plot of ground for a rectory, at which the officiating clergyman shall reside. But both devises fail, or rather cannot take present effect, because upon .trusts not permitted by the laws of the State. There can then be no such church and rectory, and it follows that there can be no rector, or missionary, or other minister employed to officiate, or who shall officiate there. During the lives of Mead and Wright, until the decease of both, while the trust is to be executed by the testamentary trustees, there can be no person entitled to the income of the fund, because there can be no one answering the description of the beneficiary. It is inconsistent with the plan and scheme of the testator, as well as hostile to the spirit of the statute regulating accumulations of personal property, to permit an accumulation of the interest upon the principal *345 sum bequeathed for an indefinite period, which may extend through very many years.
In House v. Chapman (4 Vesey, 404), the testatrix gave the rest and residue of her estate, after the payment of legacies, .etc., to her executors, etc., for the purpose of building or- purchasing a chapel for the service of Almighty God, and if there was any surplus, the same, to an amount not exceeding £20 a year, was to go toward the support oí a faithful gospel minister, and if there was any further surplus, the same was to be applied to such charitable uses as her executors should think proper. The trust to purchase or build the chapel was held void, and it was held to vitiate the whole trust, as well of the personal as the real estate. The master of the rolls was of the opinion that the gift for the support of a minister was dependent upon the trust for building or purchasing a chapel. He was also of the opinion that although the provision was for the support of a minister generally, the testatrix must have meant a minister in that chapel. This bequest is but accessory to the devise of the church lot, which, so far as the present claimants are concerned, is void. (Attorney-General v. Davies, 9 Ves., 535; Same v. Bagley, 2 Brown, 429; Coster v. Lorillard, 14 W. R., 265; Harris v. Clark, 3 Seld., 242.) Although the two devises and the one bequest to. the trustees are the subjects of as many different paragraphs of the codicil, following each other, they together constitute but a single, trust, parts of a single scheme for the establishment of a church, providing a rectory and furnishing a support for the minister. The principal object failing to the extent that it cannot be carried into effect at the present, and the validity of the provision for the future not being established, no effect can be given to any part of it. It is as if the principal purpose and object of the gift had altogether failed. The testator looked to a present execution of the trust, and not to a purpose to be carried into effect long in the future, and what effect the failure of this intent would have upon the whole trust cannot now be determined. It is to be regretted that the pious intentions of the testator cannot *346 be carried into effect, and it is not improbable that some compromise can be made between the heirs-at-law and next of kin and the church which the testator desired so greatly to establish and support, which will be satisfactory to all.
There are embarrassing questions, difficult of solution, yet to be passed upon, before the heirs and representatives of the testator can have an assured and perfect title to the estate, or the church and congregation can be put in possession of the property.
The judgment below must be reversed, and judgment declaring that the testamentary trustees took no title or estate in the property, real or personal, given by the codicil to them upon the trusts named, leaving the other questions to be determined when they shall arise. Neither party should recover costs against the other.
All concur.
Judgment accordingly.