THOMAS D. COTTMAN, as sole Executor, etc., of ROBERT R. McILVAINE, Deceased, Plaintiff and Appellant, *v.* WILLIAM R. GRACE and Others, Defendants and Appellants, and WILLIAM McILVAINE, Defendants and Respondents.

*Trust for the establishment and maintenance of a public library — when valid — what is a sufficient designation of the beneficiaries — when a devise to a city is valid under chapter 318 of 1840, as amended by chapter 261 of 1841.*

Robert R. McIlvaine died, leaving a will by which he gave and bequeathed all his library, consisting of a collection of books, pamphlets, maps, documents, papers, and all things thereunto appertaining, " to the mayor of the city of New York, and the president of the New York Academy of Medicine, and the president of the College of Physicians and Surgeons of the city of New York, and their successors, to have and to hold the same, in trust forever, for the uses and purposes hereinafter designated." The testator nominated, constituted and appointed the said persons and their successors his trustees for said purposes, "that is say: I will and direct that my said trustees, with the funds and means hereinafter provided for that purpose, do locate and establish my said library in a building, or part of a building, to be by them provided for that purpose, and do forever maintain, perpetuate, improve and provide for the same under the name of ' The McIlvaine Library,' dedicated to my father and mother, as a perpetual

memorial of the honor, respect, love and esteem which I have ever cherished for them and their memory."

The will further provided that the said library should, at all reasonable hours and days, as said trustees should appoint, be open to the public of all classes for their free use and consultation, without any restrictions or conditions whatever, except orderly conduct and good behavior, and that it be forever maintained a separate, exclusive and distinct institution, and be kept free from all admixture or amalgamation with any other library, collection or institution. He directed his executors to sell and dispose of his estate, real and personal, and to invest so much of the proceeds as should be necessary to provide for the payment of certain annuities and to pay all the rest, residue and remainder thereof to his said trustees, to be by them invested in the purchase or rental of suitable accommodations for his library, and in bonds, etc., the income of such investments to be used and devoted solely for and to the establishment, maintenance, improvement and perpetuation of his said library.

*Held,* that a valid trust was created by the will.

That the title to the whole estate was vested absolutely in the trustees named, to be by them devoted to the establishment, management and perpetuation of the library.

That the beneficiaries of the trust were the public in general of the city of New York, for whose benefit the library was created.

That this construction of the will was in harmony with, and favored by, chapter 318 of 1840, as amended by chapter 261 of 1841, providing that real and personal estate may be granted and conveyed to the corporation of any city in this State, to be held in trust for the purposes of education or the diffusion of knowledge.

APPEAL from a judgment of the Special Term, giving construction to a will.

This action was brought to obtain a judicial construction of the will of the late Robert R. McIlvaine. The will contained the following among other provisions :

*First.* I give and bequeath my library, consisting of a collection of books, pamphlets, maps, documents, papers, and all things thereunto appertaining, to the mayor of the city of New York, and the president of the New York Academy of Medicine, and the president of the College of Physicians and Surgeons of the city of New York, and their successors, to have and to hold the same, in trust forever, for the uses and purposes hereinafter designated ; and I hereby nominate, constitute and appoint the said mayor of the city of New York, and the said president of the New York Academy of Medicine, and the said president of the College of Physicians and Surgeons of the city of New York, and their suc-

cessors, my trustees for said purposes; that is to say : I will and direct that my said trustees, with the funds and means hereinafter provided for that purpose, do locate and establish my said library in a building or part of a building to be by them provided for that purpose, and do forever maintain, perpetuate, improve and provide for the same under the name of "The McIlvaine Library," dedicated to my father and mother as a perpetual memorial of the honor, respect, love and esteem which I have ever cherished for them and their memory, and the uses, purposes and conditions of said trust are, and ever shall be, as follows:

1. That the said library shall, at all reasonable hours and days, as my said trustees shall appoint, be open to the public of all classes, for their free use and consultation, without any restrictions or conditions whatever, except orderly conduct and good behavior.

2. That the said library be forever maintained as a separate, exclusive and distinct institution, to be forever known as "The McIlvaine Library," and to be kept free from all admixture or amalgamation with any other library, collection or institution.

3. That all newspapers, novels, trivial books and compositions usually designated as "trash" be excluded from said library; and that no books or documents be purchased for said library, or added thereto, or deposited therein, except standard works relating to the sciences, classics and liberal professions.  * * *

*Second.* I give, devise and bequeath all my property, both real and personal, except my library aforementioned, to Thomas D. Cottman, my executor hereinafter appointed, in trust for the purposes hereinafter mentioned, with directions and power to sell and dispose of the same, and to distribute the proceeds thereof as follows, that is to say:

1. To pay all my funeral expenses and just debts and liabilities.

2. To invest such a sum as will produce an annual income of $400, and out of said income of $400 to pay  * * *  the principal sums required to produce said annuities to fall into my residuary estate at the death of the annuitant.

3. And all the rest, remainder and residue of said proceeds to pay to the trustees of my said library hereinbefore named, for the establishment, maintenance, improvement and perpetuation of my said library forever; and I do hereby will and direct that my

said trustees invest the said proceeds in the purchase or rental of suitable accommodations for my said library, and in United States, New York State and New York city bonds or on bond and mortgage on improved real estate in the city of New York, not to exceed one-half the assessed value of said real estate, and to use and devote the income of such investments solely for and to the establishment, maintenance, improvement and perpetuation of my said library.

The testator left personal and real estate situated in the State of New York, and real estate and leasehold property in the State of Ohio. The executor, in accordance with the directions of the will, had converted the property into money and was preparing to render an account of his administration, when the heirs and next of kin of the testator advanced the claim that the disposition of his estate, by the testator, for the establishment of a public library, was illegal and void, and they were, therefore, entitled to succeed to it under the statutes of descent or distribution.

The testator was unmarried and left no child or descendant. His heirs and next of kin were a nephew and two nieces — three of the annuitants named in the will.

*J. A. McCreery,* for the executor, appellant.

*George L. Sterling,* for William R. Grace and others, defendants and appellants.

*Thomas Thatcher, John W. Simpson, Sherman Evarts, Howard Mansfield,* for the defendants, respondents.

BRADY, J.:

The testator designed, by the appropriation of the bulk of his estate, to create a library, to be located in the city of New York, under the designation of the *McIlvaine Library,* which he dedicated to his father and mother as a perpetual memorial of the honor, respect, love and esteem which he had ever cherished for them and their memory. And, as the initiative of that design, he gave, by the first clause of his will, his library, collection of books, pamphlets, maps, documents, papers and all things thereunto appertaining to the mayor of the city of New York, the president of the New York Academy of Medicine, and the president of the College of

Physicians and Surgeons of New York, and their successors, to have and to hold the same in trust forever for the purpose suggested.   And he nominated these persons, and their successors, his trustees for the purpose of locating and establishing the library in a building to be provided by them for that purpose.

By the second clause of his will, he directed the payment of his funeral expenses and made provision for the payment of certain annuities, and then provided that all the rest, remainder and residue of the proceeds of his real and personal estate (which he directed his executor to sell) should be paid to the trustees named in the first paragraph of his will, for the establishment, maintenance, improvement and perpetuation of the library.   And he further directed that the trustees should invest the proceeds so to be paid to them, in the purchase or rental of suitable accommodations for the library, and to use and devote the income of such investment solely for and to the establishment, maintenance, improvement and perpetuation of his library.

In the consideration of the provisions of the will, the learned justice presiding in the court below thought that the testator intended to perpetuate his name by the establishment of a public library, and that its affairs were to be administered by a board of trustees, which was to be in perpetuity.   Such trustees having been selected, not in their official characters as the representatives of the various corporations of which they were officers, but as persons in their official characters, the provision merely serving to designate the individuals who were to act as trustees.   And the learned justice says : " It is conceded that such a purpose would be illegal as in contravention of the statute " and it is supposed he meant the statute against perpetuities.

The error of this view is suggested by the absolute gift of the books, pamphlets, maps and documents to the persons named in the first clause of the will, and also of the whole residuary estate, to be managed by them in the manner indicated, namely, by the purchase or rental of suitable accommodations for the library, and the appropriation of the income of such estate to its management.   In other words, the title to the whole estate to be employed for the library and its perpetuity is given to these trustees.   The income to be employed is not to be paid over to them by any other, and they

thereby made the beneficiaries, as in the case of *Adams* v. *Perry* (43 N. Y., 487). In that case the executors were authorized and empowered to sell the residue of the estate, to invest it, and to pay to the board of trustees of the Lowville Academy, forever, the annual income, which was to be devoted by them to the care and preservation of the grounds of the academy and to the support and maintenance of a female department. The court said in that case : " It was manifestly not the intention of the testator to give to the academy any control over the fund or its investment or the exercise of any discretion in regard thereto." Which is very different from the present case, because it was manifestly the intention of the testator to give absolute control of the fund provided for that purpose to the trustees named by him in the first clause of the will, not only as to its investment and the application of the income, but to the purchase or rental of suitable accommodations for his library ; in other words, the scheme of the will was to vest the title absolutely in the trustees named, of all the property which was appropriated to its establishment, management and perpetuity. It cannot be understood how any objection can be interposed successfully against the creation of such a trust.

Many questions have been considered growing out of the will, but this view does not seem to have occurred to the respective counsel. The only possible suggestion that may be made against the view expressed is that the beneficiaries are not determined. But that seems to be disposed of by the case of *Burrill* v. *Boardman* (43 N. Y., 254), in which the testator bequeathed the residue of his estate to trustees for the establishment of a library for the reception and relief of sick and destitute persons. Here the provision was that the library should at reasonable hours be open to the public of all classes for their free use and consultation, without restrictions or conditions, except orderly conduct and good behavior. That meant the public in general of the city of New York, for whose benefit the library was created.

By the statute of 1840, chapter 318, section 2, as amended by chapter 261 of 1841, it is provided that real and personal estate may be granted and conveyed to the corporation of any city in this State, to be held in trust for the purposes of education or the diffusion of knowledge, when such conditions as may be prescribed by the

grantor or donor are agreed to by the corporation ; and all the real estate so granted or conveyed may be held by the same, subject to such conditions as may be prescribed and agreed upon as aforesaid. If the testator had given his property to the mayor of New York alone, and his successor, under this statute there could be no possible doubt about the validity of the gift as one to the corporation, and the addition of two persons in connection with him, when the law expressly declares it to be a gift to and for the benefit of New York, where it was to be located and of which it was to become a part, does not seem in any way to interfere materially with this statute in spirit or in form. And this is presented as an additional reason why the will should be upheld.

It is thought for these reasons that the judgment pronounced by the learned justice in the court below was erroneous and should be reversed, and a decree entered pronouncing the provisions in reference to the library, in accordance with the views herein expressed, to be valid, with costs, however, to all parties to be paid out of the fund, as it is thought the appeal was justifiable and proper and the case properly brought, indeed necessarily so

Daniels J., concurred.

Judgment reversed and decree ordered as directed in opinion.