(77 Misc. Rep. 494.)

TRUSTEES OF SAILORS' SNUG HARBOR v. CARMODY, Atty. Gen.

(Supreme Court, Special Term, New York County. August, 1912.)

1. PLEADING (§ 205*)—OBJECTIONS AND WAIVER—DEMURRER.

Under Code Civ. Proc. §§ 488, 490, 499, the objection of misjoinder of parties plaintiff is not reached by demurrer on the ground that the complaint does not state a cause of action, but must be distinctly specified as a ground of demurrer, or it is waived.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 491–493, 495, 496, 498–510; Dec. Dig. § 205.*]

2. CHARITIES (§ 35*)—CHARITABLE CORPORATION—TITLE TO PROPERTY.

Under Laws 1806, c. 4, incorporating the testamentary trustees of a residuary estate of a testator as the "Trustees of the Sailors' Snug Harbor, in the City of New York," to give effect to the charitable purposes expressed in the will, the entire title to all the real and personal property devised and bequeathed became vested in the corporation for the purposes named in the statute.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 67; Dec. Dig. § 35.*]

3. CHARITIES (§ 43*)—CHARITABLE CORPORATION—POWERS.

A charitable corporation created by statute, with inherent power to sell the real estate of which a testator died seised, must exercise such power, if deemed necessary, on its own responsibility, and cannot maintain an action to obtain instructions as to its powers in dealing with the property.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 83–90; Dec. Dig. § 43.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Trustees of Sailors' Snug Harbor against Thomas Carmody, as Attorney General. Demurrer to complaint sustained, and complaint dismissed.

Hawkins, Delafield & Longfellow, of New York City (Lewis L. Delafield, of New York City, of counsel), for plaintiff.

Henry Selden Bacon, of Goshen, for defendant.

PAGE, J. This action is brought by the trustees of Sailors' Snug Harbor, as trustees of the corporation and as trustees of the trust created by the last will and testament of Robert Richard Randall, deceased, against the Attorney General of this state, for the purpose of obtaining the instructions of this court as to the powers of the corporation in dealing with the real and personal property devised and bequeathed in trust by the will of Robert Richard Randall. The Attorney General demurs on the ground that the complaint does not state facts sufficient to constitute a cause of action.

[1] On the argument the Attorney General raised the further objection that there is a misjoinder of parties plaintiff, in that the trustees of the trust under the will join as plaintiffs in the suit. It would seem that as the trustees under the will were incorporated as trustees of the Sailors' Snug Harbor by act of the Legislature (Laws of 1806, c. 4), and the entire title of all the property, real and personal, devised and bequeathed under the will became vested in the corporation, the trustees under the will have no further interest in the execution of the trust, and it is doubtful whether, as such they exist. They are, therefore, neither necessary nor proper parties to the action. This question, however, is not properly before me. . The defendant has demurred solely on the ground that the complaint did not state facts sufficient to constitute a cause of action. Misjoinder of parties plaintiff is a distinct ground of demurrer, and the objection must be distinctly specified, and, unless so specified, is waived. Code Civ. Pro. §§ 488, 490, 499; Berney v. Drexel, 33 Hun, 419; Wolverton v. Rogers, 123 App. Div. 45, 107 N. Y. Supp. 883. The cases relied upon by the Attorney General (Walrath v. Handy, 24 How. Prac. 353; Mann v. Marsh, 35 Barb. 68) were decided under the Code of Procedure, in which misjoinder of parties was not a distinct ground of demurrer. Code Proc. § 144.

[2] The facts as set forth in the complaint, briefly stated, are as follows:

Robert Richard Randall died on or about the 5th day of June, 1801, leaving a last will and testament in which, after specific legacies, he gave, devised, and bequeathed all the rest, residue, and remainder of his estate, both real and personal, to certain public and corporate officers and their successors, forever,

"to, for and upon the uses, trusts, intent and purposes, and subject to the direction and appointments hereinafter mentioned and declared concerning the same; that is to say, out of the rents, issues and profits of the said rest, residue and remainder of my said real and personal estate, to erect and build upon some eligible part of the land upon which I now reside, an asylum or marine hospital, to be called 'The Sailors' Snug Harbor,' for the purposes of maintaining and supporting aged, decrepit and worn out sailors, as soon as they, my said charity trustees or a majority of them shall judge the proceeds

of the said estate will support fifty of the said sailors and upwards. And I do hereby direct that the income of said real and personal estate shall forever hereafter be used and applied for supporting the asylum or marine hospital hereby directed to be built and for maintaining sailors of the above description therein in such manner as the said trustees or a majority of them may from time to time, or their successors in office may from time to time, direct. And it is my intention that the institution hereby directed and created shall be perpetual, and that the above mentioned officers for the time being and their successors should forever continue and be the governors thereof and have the superintendence of the same; and it is my will and desire that if it cannot legally be done according to my above intention by them without an act of the Legislature it is my will and desire that they will as soon as possible apply for an act of the Legislature to incorporate them for the purposes above specified."

The will was duly admitted to probate, and upon petition of the executors and trustees under the will the Legislature passed an act (Laws of 1806, c. 4) which recited the terms of the will as to the residuary clause and enacted therein that the trustees therein specified and their successors in office, in virtue of their said offices, "shall be and hereby are constituted and declared to be a body corporate, in fact and in name, by the name and style of the Trustees of the Sailors' Snug Harbor, in the City of New York," giving them the usual corporate powers, and further providing:

"And also they and their successors, by name and style aforesaid, shall be capable, in law, of holding and disposing of said real and personal estate devised and bequeathed as aforesaid, according to the intention of the said will, and the same is hereby declared to be vested in them and their successors in office for the purposes therein expressed; and shall also be capable of purchasing, holding and conveying any other real and personal estate for the use and benefit of the said corporation in such manner as to them or a majority of them shall appear to be most conducive to the interest of the said institution."

A portion of the lands which had become vested in the corporation was leased by the trustees upon ground leases, and in 1825 a sufficient sum had been accumulated for the erection of the asylum or marine hospital; but the trustees deemed it wiser to reserve the lands devised by the will as a source of revenue, and buy lands upon the water front upon which to establish such asylum or marine hospital. In 1828 a statute (Laws of 1828, c. 276) was enacted by the Legislature authorizing the trustees of the Sailors' Snug Harbor to adopt all such measures as may be necessary to regulate the tract of land devised to them by the said will, so as to make it conform to the permanent plan of the city, and for that purpose to dig down their ground where it is too high and remove it to other parts where it is too low, and that it shall be lawful for them to sell and dispose of their surplus earth. It further authorized them, with the approval of the Court of Chancery, to purchase suitable land upon which to build and erect a marine hospital, to be called and known forever as the Sailors' Snug Harbor, and further providing that:

"So soon as a suitable site for such marine hospital shall be purchased, with the approbation of the Court of Chancery, it shall be lawful for the said trustees to lease all the lots now belonging to the Sailors' Snug Harbor on such terms and conditions and under such covenants as they may deem most beneficial for the interests thereof."

Pursuant to the authority conferred by this act of the Legislature, the corporation purchased the lands on Staten Island, and have erected thereon several large and well-equipped buildings for the purposes stated in the will. The property devised was divided into small lots, containing about 2,500 square feet, and leased in an unimproved condition to persons who agreed to make their own improvements. From 1830 to 1880 the said lands were highly desirable for residential purposes, and upon substantially all of the lots the lessees have erected dwelling houses three or four stories in height: These leases were made for the term of 21 years, at a rental equal to 5 per cent. of the value of the land, the lessee to pay all taxes and assessments. The leases provided, in substance, that unless, at the expiration of the term, the parties should agree upon a renewal, the value of the land and the value of the improvements should be separately ascertained by appraisal, and that the lessors should have the option either to pay the value of the improvements as thus ascertained, and thereupon to re-enter, or else to renew the lease for a further period of 21 years at a rent equal to 5 per cent. of the value of the land so ascertained. It was provided that each renewal lease should contain similar covenants for renewal, and that if, at any time, the lease was not renewed, the lessor should pay the value of the improvements, and that the lessee should not be required to surrender the demised premises, unless the said payments were made or tendered.

Although this policy proved wise and profitable so long as said lands were desirable chiefly for residential purposes, commencing with the year 1869 the lots fronting on Broadway, and about the year 1880 a large part of the remainder of said tract, became available for business purposes, and ceased to be desirable for residential purposes. At the present time substantially all of the said tract is desirable and available for business purposes, and cannot be used or leased to advantage for residential purposes. Furthermore, by reason of the size of the tract of land in the Fifteenth ward, devised by said will, remaining in its present condition, business that would naturally come to this section is going elsewhere, greatly to the detriment of the further development of this property. By reason of the change of condition the trustees have, as far as possible, repossessed themselves of a portion of said lots, either by paying for the building thereon at the expiration of the leases, or by purchasing outstanding leaseholds, or as a result of negotiations with lessees. The trustees have thus been enabled on 21 of the lots to erect seven store and loft buildings, and have leased for a long term about 51 of the said lots to a corporation which has adequately improved the same. The funds in possession of the corporation are not sufficient to enable the trustees to adequately improve the remaining lots, of which they have repossessed themselves. Some of the trustees are of the opinion that unless at least a portion of the said real estate be sold, and the proceeds applied to the adequate improvement of the remainder of said land, it will be impossible to obtain from the property held by the corporation a sufficient income to maintain the asylum or marine hospital, as directed by the will. It is the belief of certain other trustees that it is desirable

to mortgage rather than to sell a portion of the real estate, and to apply the proceeds to the adequate improvement of the remainder of said land.

The plaintiffs, desiring the instructions of the court as to their powers and duties, pray that by a judgment to be made herein it may be judicially determined and decreed whether the plaintiffs have power and authority to sell or to mortgage all or any part of the real estate in the First and Fifteenth wards of the city of New York, hereinbefore referred to, of which Robert Richard Randall died seised, and that if it be found that power to sell the real estate, or any part thereof, exists, or that such power may by order or judgment of this court be conferred upon the plaintiffs, the court shall determine or shall permit the plaintiffs to determine what part, if any, of said real estate should be sold, and that it shall thereupon by its order or judgment, or by order or orders to be made at the foot of the judgment, sanction, permit, or direct a sale of such real estate, or of such portion of said real estate, if any, it shall be determined should be sold.

After many years of judicial controversy it was finally settled that the English doctrine of charitable uses and trusts did not prevail in this state, but that we had substituted "a charity system maintained by our statute laws in the form of corporate charters, containing by legislative enactment power to receive, hold, and administer charitable gifts of every variety known in the practice of civilized communities and our statute of uses and trusts defining the trusts which may lawfully be created." This statute has been held binding on the courts, although, of course, it ceases to operate when the Legislature charters a corporation for a charitable purpose, with power to take and hold property in perpetuity, for such purposes. Holland v. Alcock, 108 N. Y. 312, 336, 16 N. E. 305, 2 Am. St. Rep. 420. When the Legislature passed the act incorporating the trustees of the Sailors' Snug Harbor, the legal title to the property devised passed to the corporation for its corporate purposes. Inglis v. Trustees of the Sailors' Snug Harbor, 3 Pet. 99, 118, 144, 7 L. Ed. 617. This has been recognized as the correct construction of the act by our courts.

"In Inglis v. Sailors' Snug Harbor there was no trust created, no discretion vested in the executor, no conveyance to be made after the testator's death. His intention to give his property to a corporation to be created to carry out his charitable purpose was clear. Such was the fact, also, in Burrill v. Boardman, 43 N. Y. 254 [3 Am. Rep. 694]. By the will in that case the property was given directly to the corporation which the testator contemplated should be created after his death. No trust was created, and no discretion was bestowed upon the executors to determine whether the corporation should or should not have it. Once created, the property, by force of the will, vested in the corporation." Tilden v. Green, 130 N. Y. 29, 48, 28 N. E. 880, 883 (14 L. R. A. 33, 27 Am. St. Rep. 487).

In Burrill v. Boardman, supra, the provisions of the will were very similar to the will in this case, and the court held that the title to the property vested in the corporation immediately on its creation. 43 N. Y. 258, 3 Am. Rep. 694. That the corporation in the case at bar was created expressly to give effect to the charitable purposes of the donor, as expressed in the will, does not create a trust in the usual accepta-

tion of the term.  That the statute, instead of setting forth in extenso the use to which the property is to be devoted, refers to the will, does not make the will the source of the authority of the corporation.  The authority of the corporation is conferred by the state in its act of incorporation.  Limitations upon its powers to deal with the property are not to be sought in the will, but in the act of incorporation and other acts of the Legislature enacted for the government, regulation, and control of such corporations.  While the property donated to the corporation is impressed with a permanent trust character, such character is impressed by the state in the instrument of incorporation by prescribing the corporate purposes which are conferred and not by the private donor.  The state enforces the trust features by laws relating to the administration of corporate property.  The duties of the corporation are in some respects fiduciary, but not so as to interfere with its title to the property.

There is no likeness between a public and a private charity, and no rights are vested, so that they could not be divested, at least with the consent of the corporation, and any act of the Legislature authorizing a deviation in the administration of a portion of the property, or an alienation of a portion of the property, so long as it is consonant with the main purpose of the corporation, is not an interference with vested rights, for no rights vest in the property, except subject to such rules as the state prescribes.  In the case at bar the will directed the erection of the asylum and home on the property where the testator resided. The Legislature, on petition of the corporation, authorized it to conform this property to the general plan of the city, by cutting streets through it and making it level with surrounding property, thereby destroying it for the use the donor had prescribed, but making it much more advantageous for the accomplishment of the corporate purposes, by making it possible, through the income derived from these lands, to buy lands elsewhere, and thereon to build, equip, and maintain the asylum and home; and the Legislature thereafter gave the power to the corporation to devote a portion of its funds to the purchasing of the property and erecting the buildings of the present Sailors' Snug Harbor on Staten Island.  There was no interference with vested rights in this change of use.  It was done to permit the corporation to more effectually carry out its corporate purposes.

[3]  The absolute title to the property being in the corporation, not as a trust estate, but for the corporate use as expressed in the act of incorporation, when in the judgment of the trustees it is necessary to sell a portion thereof to carry out the main purpose of the corporation, they can do so, if as a corporation they have such power.  If they do not have the power, it cannot be given them by the court. Resort must be had to the Legislature to obtain an extension of their powers heretofore granted.  The general rule of the common law is that the right to take, hold, and grant property, real or personal, is of the essence of every domestic corporation.  Sherwood v. American Bible Soc., *40 N. Y. 561; Matter of McGraw, 111 N. Y. 66, 19 N. E. 233, 2 L. R. A. 387.  So "at common law every corporation aggregate had an unlimited power over its property, and might alienate the

same in fee, or grant any lesser estate therein, without limitation or restriction, and the same general power as to corporations is recognized in the recent revision of the laws of this state." Dutch Church v. Mott, 7 Paige, 83, 32 Am. Dec. 613. Unless, therefore, this common-law right has been taken away by legislative enactment, it became a part of the plaintiff's corporate powers upon its incorporation.

By the statute of 13 Elizabeth the power of religious and eleemosynary corporations to alienate their property was restricted to leases for a limited term, and it has been thought by some that the statutory limitation upon such corporations obtained in this state, and that chapter 43, § 4, Laws of 1806, was passed to enlarge their powers by providing for alienation of their property with the consent of the chancellor. By chapter 46 of the Laws of 1788, last section, it was provided:

"That from and after the first day of May next none of the statutes of England or of Great Britain shall operate or be considered as laws of this state."

It was by virtue of this statute that the statute of charitable uses and trusts (43 Eliz.) was held to have been repealed after years of judicial controversy. By the same reasoning the statute of 13 Elizabeth must be held to have been repealed, and the act of 1806 considered, not as an extension of the power of alienation to such corporation, but as a limitation upon the absolute power of alienation that was vested in such corporations; the purpose being to secure in advance the use to which the proceeds of the sale were to be devoted, rather than by injunction, or other relief, preventing a dissipation of the fund or its devotion to some use foreign to the purposes of the society or sect to which the property was originally devoted. Dutch Church v. Mott, supra. When provision was made for the incorporation of benevolent and charitable societies by general act, a similar limitation was placed on the power of such corporation. Laws of 1854, c. 50; Laws of 1861, c. 58. But this was expressly not to apply to charitable corporations incorporated under a special act of the Legislature.

Since the repeal of the statute of 13 Elizabeth, therefore, there has been no statutory limitation on the common-law power of alienation possessed by every corporation. That act was repealed prior to the incorporation of the plaintiff; hence there was no limitation imposed by law to the alienation of property by this corporation, unless it was contained in the act of incorporation itself. On turning to that act we find the plaintiff "shall be capable of holding and disposing of the said real and personal estate devised and bequeathed as aforesaid according to the intention of the said will." No power of disposing of the said real estate is specified in the will. While I would not argue from these words alone the creation of a power of sale, it seems to me they recognize an existing power. I am of opinion that the so-called Tilden Act (Laws of 1893, c. 701, as amended by Laws of 1901, c. 291; Real Prop. Law [Consol. Laws 1909, c. 50] § 113) has no application to this case. This was not a gift, grant or devise, such as is set forth in subdivision one of that act, and the control of the

Supreme Court, given by subdivision 2 of the act, is limited by the words "in all cases provided for in subdivision one of this section."

The corporation also asks the advice of the court in certain particulars. No stress, however, was laid upon them either on the argument or in the brief submitted, and, having arrived at the conclusion I have, it is not necessary to discuss them.

In conclusion, from the facts set forth in the complaint, I am of opinion that the plaintiff does not hold the property as a trustee under the will of Randall, but holds the title absolutely for the corporate purposes expressed in its act of incorporation; that by reason thereof two conclusions follow: That the plaintiff is not entitled to maintain this action for advice, nor can this court authorize the sale of its property. That such power of sale is one of its inherent powers, the exercise of which, if deemed necessary by the trustees of the corporation for the best interest of the corporation in carrying out the purpose of its incorporation, must be undertaken upon their own responsibility, and order or judgment of this court in advance limited to a proclamation of power such as is asked in this complaint would have no binding effect. If the trustees were about to dispose of some specific property for purposes outside the content of its corporate powers, upon the application of the corporation, or any of the trustees, or of the Attorney General, the court could restrain the act or otherwise adjudicate the issue. But I do not think this action is maintainable.

The demurrer is sustained, and the complaint dismissed.

Complaint dismissed.