CHARLES D. BURRILL, executor of JAMES C. R. BROWN, deceased, Appellant, *v.* JULIA M. BOARDMAN, executrix of JAMES H. ROOSEVELT, Respondents.

An executory bequest limited to the use of a corporation to be created within the period allowed for the vesting of future estates and interests is valid.

Where a testator bequeathed the residue of his estate to nine trustees, for the establishment of an hospital for the reception and relief of sick and diseased persons, and directed them to apply to the legislature for a charter to incorporate the same, and in case the legislature should refuse to grant this within two years next after his death, *provided two lives named in his will should continue so long*, then the trustees were to pay over the same to the United States.—*Held*, that the provisions did not violate the statute of perpetuities, but that the corporation could take only in case the charter was granted within the two lives named.

*Held* further, that the bequest was not void on account of the uncertainty of the beneficiary.

· *Quere* as to the validity of the contingent bequest over to the United States. (CHURCH, Ch. J.)

(Argued November 17th, 1870; decided January 24th, 1871.)

Appeal from a judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment of the Special Term dismissing the complaint.

The object of the action was to procure a judicial construction, annulling as illegal and void, the bequest made by James H. Roosevelt, deceased, of his residuary personal estate, which James C. Roosevelt Brown, the plaintiff's testator, who was sole next of kin of said Roosevelt, ratified and confirmed by deed in his lifetime, and by his last will and testament. The will, after disposing of the real estate, contains a bequest to his executors of $100,000 in trust, to receive the profits thereof, and apply the same to the use of his nephew, James C. Brown, during his life, and upon his death to his issue, if living, and if none, then to pay the same to the residuary legatees in trust for a hospital endowment; and also, a bequest of all the rest and residue of his

personal estate, lapsed legacies, and estate not well disposed of, to the presidents, for the time being, of five certain charitable institutions, and four individuals named by him in his will, and "the survivor and survivors of them for the establishment, in the city of New York, of an hospital for the reception and relief of sick and diseased persons, and for its permanent endowment."

Such institution was to be managed and conducted by the nine trustees thus provided, and provision was made for filling vacancies in the board of trustees. The will also directed his trustees to apply to the legislature of the State for proper acts to incorporate, secure, and perpetuate the hospital, and in case the legislature failed to grant the same, to convey the fund to the United States. The contingent bequest to the United States was accompanied with expressions recommending that that government pass laws to carry out the trust. The clause of the will containing these provisions will be found stated in the opinion of the court. The testator died November 30th, 1843, leaving as his heir-at-law his nephew, James C. R. Brown, who died January 20th, 1864, and the plaintiff is his executor.

The act of incorporation was passed by the legislature February 2d, 1864, and was accepted by the trustees.

*George F. Comstock,* for the appellant, insisted that the trustees could not take the legal estate, or hold any interest in the property, legal or equitable ; that the trust was void on account of the uncertainty of the corporate donee ; that it was void as within the statute of perpetuities; he also argued at great length, to show that the system of charitable uses had never been in force in this State, referring to and incorporating his argument in *Bascom* v. *Albertson* (34 N. Y., 584); *Levy* v. *Levy* (33 N. Y., 97).

*John M. Mason, with Charles O'Conor,* of counsel for all the defendants, except the United States, insisted that the hospital was to be managed and created only by means of a cor-

poration to be created by law; that it was not within the statute of perpetuities. (*Cadell* v. *Palmer*, 1 Cl. & Finelly, 372, 421, 422; 16 W., 114; 23 N. Y., 71, 9th clause; 28 B., 141 to 148; 24 N. Y., 12; 1 Hilton, 494; 23 N. Y., 375.) That the bequest to the corporation to be created was good. (34 N. Y., 596 to 598; 4 Wheaton, 693; 9 Peter's U. S., 315 to 317; 3 Peter's U. S., 115; 24 N. Y., 651; 33 N. Y., 113 to 119; Ambler, 550; 3 Vesey Qr., 714.)

*Noah Davis,* of counsel for the United States.

*Theodore W. Dwight,* of counsel for defendant, except the United States, argued in favor of the existence of charitable uses in this State.

CHURCH, Ch. J. This action was brought by the plaintiff as executor of the will of James C. Rosevelt Brown, against the defendant, Julia M. Boardman, executrix of the will of James H. Rosevelt, deceased, and others, for the purpose of having the residuary bequest in the will of the latter providing for founding and maintaining a hospital declared void, and claiming that the plaintiff, as executor of Brown, who was the heir-at-law of the testator, Rosevelt, is entitled to all sums thus attempted to be bequeathed, and to the whole of the residuary estate.

The solution of the questions presented involves the construction and validity of those provisions of the will of Mr. Rosevelt which provide for the founding and permanent endowment of a hospital; and it is important, in the first place, to ascertain the intent and meaning of the provisions in question.

The testator gave the residue of his personal estate, including lapsed legacies, etc., in trust to the successive presidents of five "certain incorporations," naming them, and to four private individuals, naming them, "and to the survivor and survivors of them for the establishment in the city of New York of an hospital for the reception and relief of sick and dis-

eased persons, and for its permanent endowment." He then directed that the institution should be managed by the nine trustees thus appointed, and in case of any vacancy in the individual trustees it should be filled by the official trustees. After some further directions about the management of the funds, the will contains the following clauses :

"I direct my trustees promptly to apply to the legislature of this State for proper acts to incorporate, secure and perpetuate said hospital. And should such legislature for two years next after my decease (provided the youngest of my said individual trustees living at my decease, and my said nephew, or either of them, shall so long live,) refuse or neglect to grant a liberal charter for the safe organization, conduct and perpetuity of such hospital establishment in accordance with the provisions of my will, I, in that event, direct my trustees from time to time to pay over the above bequests that may come into their possession under my will to the government of the United States of America," etc.

Taking these several clauses together, it is quite manifest that the unincorporated trustees could not administer the charity, and had no duty imposed upon them with reference to the fund except to pay it over to the ulterior legatee, if the legislature failed to grant the charter. It is true the residuary estate was given to them for the establishment and endowment of a hospital; but they could only accomplish this according to the terms of the will, by and through a corporation to be thereafter created, which it was made their duty promptly to apply for.

Such is the general scope of the will. The purpose is first declared, and then the means of accomplishing it are prescribed, and, to render his intent more certain, the testator declared that, if the charter was not granted within a specified period the bequest should go in another direction.

This provision repels any implication even in favor of the right of the private trustees to administer the fund for the benefit of the charity, or to do any act with reference to it, except to apply for a charter. If, therefore, the limitation

to the incorporated hospital is valid as a contingent executory bequest, it is not material to inquire into the competency of the unincorporated trustees to take the legal title for the temporary purpose indicated. Neither their appointment nor their title was essential to the validity of the contingent limitation. The law would compel the application of the property to the purposes of the lawful bequest, wherever it should be found.

It is urged that there is no bequest to the contemplated corporation, and no direction to pay the fund to it. The testator declares in the residuary clause his purpose to be the establishment of a hospital and *its permanent endowment.* The condition of the endowment is, that the legislature shall pass proper acts " to incorporate, secure and perpetuate said hospital," that is the hospital specified in the residuary clause which provides for its endowment. The next paragraph directs the manner of investing the funds of the " incorporation " thus provided. Nothing can be more certain, than that the testator designed that the title to the funds or property in the possession of the trustees or elsewhere, which was included in the residuary clause, should vest in the corporation immediately upon its creation, and a requirement for a formal payment or delivery was doubtless deemed unnecessary because the trustees of the testator were to be also trustees and managers of the corporation.

Nor can it be claimed that this is a present bequest to a corporation not *in esse.* When it appears from the will that the donee is to come into being in future, or to become qualified to take upon the happening of some future event, a present bequest will not be presumed, nor unless " there is not the least circumstance from which to collect the testator's intention of anything else than an immediate devise to take effect *in praesenti.*" (Fearne on Remainders, 536.) Here, every circumstance concurs in giving the bequest an executory character. An application was to be made to the legislature after the testator's death, for a charter. If obtained, the

bequest would take effect; if not, it would go to the ulterior donee.

The reasonable interpretation of the will is, that the testator intended to limit a contingent future interest in the nature of an executory devise, the contingency depending upon the creation of a corporation by the legislature, capable of taking within the period allowed for the suspension of ownership of property by the statute against perpetuities.

The language might have been more explicit; but avoiding technical criticisms, and observing the rule to find a lawful instead of an unlawful intent, and considering all the provisions of the will, the construction indicated seems the most natural and accurate.

It is objected that the provisions in question violate the statute against perpetuities. By this statute, the title to personal property must vest absolutely within two lives in being. A possibility of suspension beyond that for any time, however short, is fatal. (*Schettler* v. *Smith*, 41 N. Y., 328.) It is urged that such suspension is possible, because the legislature might pass the charter on the last day of the existence of the last of the two lives; that it would not become operative until accepted by the trustees, and that such acceptance would take time, during which the title could not vest.

From the language employed, the testator must have intended that the charter would be obtained and become operative within the two lives. The trustees were to apply for acts to incorporate, secure and perpetuate the hospital, and the legislature was to grant a charter for its safe organization, conduct and perpetuity within the specified period. This language implies that the testator intended a complete corporate existence. Besides, the charter to be granted could only be the one applied for, in which case no formal acceptance is necessary. (Angell & Ames on Corporations, 69.)

It is also claimed that the bequest to the corporation does not depend upon obtaining the charter within the two lives, and that this condition is applicable only to the limitation to the United States; and if that is invalid, and the charter was

afterward obtained, it might be accepted and the corporation take the bequest. This construction is too technical. When the testator declared that, if the legislature neglected for the specified period to grant the charter, the bequest to the United States should take effect, he, in substance and legal implication, declared that the corporation should not take after that period. If the former is invalid, the title would then vest immediately in the next of kin. A void provision is operative to indicate the intent of the testator. (*Van Kleeck* v. *Dutch Church*, 20 Wend. R., 457.)

The material legal question remains to be considered, viz.: Whether an executory bequest limited to the use of a corporation, to be created within the period allowed for the vesting of future estates and interests, is valid?

I am not aware that this precise question has ever been judicially determined in this State. In the cases of *Leonard* v. *Burr* (18 N. Y., 108), *Phelps* v. *Pond* (23 N. Y., 77) and *Bascom* v. *Albertson* (24 N. Y., 59), the statute against perpetuities was violated, and in *Owens* v. *The Missionary Society*, etc. (14 N. Y., 380), and in *Downing* v. *Marshall* the bequests were to unincorporated societies, incapable of taking the title. In such cases, a subsequent incorporation would not vitalize a bequest which was void at the time it was made. But two cases have been cited in favor of the validity of such a limitation. The first is the case of *Attorney-General* v. *Downing* (Wilmot's Opns., p. 16), where lands were devised to purchase a piece of ground and erect a college, and the will contained a direction to obtain a charter.

Lord Ch. J. WILMOT held such an executory devise good upon the same principle as a devise for the benefit of an unborn child. He says: "So in this case, the testator does not only declare his intention to give to a person, not *in esse*, but is actually giving directions for the creation of that person; and there is no difference between the cases, but that one is an executory trust for a natural person to be created, and the other is a political person to be created."

It is claimed that the court in this case held the devise good, independent of the provision for obtaining a charter, which is probably true; but the individual opinion of Chief Justice WILMOT upon the point is nevertheless entitled to respectful consideration.

The other case cited is that of *Inglis* v. *Sailors' Snug Harbor* (3 Peters, 99), which was decided by a divided court, and the precise ground upon which the will was sustained is not very clear; but the opinion of THOMPSON, J., upon this question, is entitled to some weight as an authority.

No authority or *dictum* has been cited against the validity of such a bequest.

As an original question, I am unable to discover any valid objection to such a bequest, nor why it does not stand upon the same principle as a future limitation for the use of an unborn child. In the latter case a natural being is to come into existence; in the other, an artificial being.

I have carefully examined the objections urged in the very able argument of the learned counsel for the appellant, and I am unable to give to them my assent. They are based mainly upon the uncertainty of the "supposed corporate donee." It is said that there is not the same certainty of description as in the case of an unborn child, who is usually described as the son of A. B., and the like; that the validity of the bequest must rest on the description itself, and cannot wait for comparison; that the power of the legislature to create corporations is unlimited, and that many such could be created, each one of which would answer, or might be claimed to answer, the general requirements of the will. It is not admitted that the same precise degree of certainty in the character and description of the donee is indispensable to the application of the same principle; but a conclusive answer to the position is suggested by the objection itself. We must look at the donee from the stand-point of the testator's death, and from that point the description is as certain as is the power of the legislature to create the precise corporation described. If the power existed to create the specified artificial being, that, and

no other, must be regarded as the one designated by the testator. It is no answer to say that the legislature could create two just alike, or even that it could create several, which might claim to come within the description. These are embarrassments which would afterward arise, and which ought not to be anticipated in determining this question. It is not to be supposed that the legislature would pass more than one charter, or any other than the one applied for, or one different than that described. The most that can be said is, that a possibility of uncertainty existed, and this can be said of any donee, or of any contingent event. If the corporation applied for and granted should not be liberal and in accordance with the provisions of the will, the ulterior donee or next of kin could challenge its right to take the bequest. It would then become a judicial question. (*Hull* v. *Hull*, 24 N. Y., 651; *Grant* v. *Raymond*, 6 Peters, 242.)

But these are questions of comparison, and do not affect the certainty of description viewed at the testator's death. If the corporation described would be a violation of the Constitution of the State or of the United States, or for any other reason it could be seen that it could not be created, the question would be quite different, but it is not sufficient to say that it might not, or that a different one might be created. The contingency upon which the limitation depended, was possible, and was to be accomplished by lawful means and was not too remote.

It is also objected that this bequest in effect violates the statute of wills, which prohibits devises to a corporation not expressly authorized to take by will. This objection is untenable because there is no bequest to such a corporation, and no bequest *in praesenti* at all. Before the bequest could take effect, the corporation must be created, and authorized to take and hold the property in perpetuity. I can see no legal objection to the adoption of the principle involved in this case in view of all its legitimate consequences. A limitation contingent upon the competent exercise of legislative power, within the period of the lawful suspension of the

Opinion of the Court, per CHURCH, Ch. J.

ownership of property, cannot be said to be unlawful, although the contemplated action of the legislature may not be in accordance with any existing law. It is not for the court to determine whether such contingent limitations ought to be permitted. Our duty is performed in determining that there is no restriction upon such testamentary dispositions. My conclusion is, that the executory bequest in his will, for founding and maintaining a hospital, is valid.

This conclusion renders it unnecessary to pass upon the effect of the will, and conveyance of the plaintiff's testator, James C. Roosevelt Brown. Nor is the validity of the ulterior bequest to the United States necessarily involved. Assuming that the United States government may take property in this way for its general purposes, or for any of its specific constitutional purposes, I should hesitate about sanctioning a gift so controlled by advisory or precatory words, as to require, or, as a matter of implied duty, demand the extension of its power and patronage within this State, over subjects foreign to its legitimate functions; but as this limitation can never take effect, it is not requisite definitely to decide the question. Nor is it proper to decide the question, whether the peculiar system of *charitable uses*, as it existed in England, has or ever had in any of its features any foothold in this State. The able and exhaustive arguments delivered by the learned counsel for the respective parties upon this question were very instructive, and will be of great service to the court, if an occasion shall ever demand its determination.

The judgment of the Supreme Court must be affirmed.

All the judges concurring, judgment affirmed.

NOTE—The last remark of the opinion gives an intimation, that the question whether the English system of charitable uses exists in this State, must be regarded as still open, notwithstanding the case of *Bascom* v. *Albertson* (34 N. Y., 584). *Rep.*