TILDEN *v.* GREEN *et al.*

(*Supreme Court, Special Term, New York County.* October, 1888.)

1. CHARITIES—BEQUESTS—CY PRES.
   The English doctrine of charitable uses, and the doctrine of *cy pres*, do not govern in New York in the construction of devises and bequests to charities.

2. SAME—WILLS—CONSTRUCTION—VOID EXCEPTIVE CLAUSE.
   Where a testator directs his executors and trustees to procure the organization of a corporation for the purpose of establishing a free library and reading-room, and to convey to it the *residuum* of his estate, and provides "but in case such institution shall not be so incorporated," such *residuum* shall be disposed of in a certain other manner, the latter clause is adversative or exceptive, and though void itself is not so connected with the preceding one as to affect its validity.

3. SAME—PERPETUITIES.

The bequest being to a corporation whose organization is to be procured by the executors and trustees within two lives in being, named in the will, the period prescribed by the New York statute against perpetuities, it cannot be said to offend against such statute because the executors and trustees might by a possibility omit to procure the incorporation within the two lives.

4. SAME—CERTAINTY OF OBJECT—CORPORATIONS TO BE ORGANIZED—AMOUNT DEVISED.

The bequest, though to a corporation to be created after the death of the testator, is not void for uncertainty of the beneficiary; and though of the whole residuary estate, is not in conflict with the mortmain policy of the laws of New York.

5. SAME—ORGANIZATION OF CORPORATION—COMPLIANCE WITH WILL.

Where the executors and trustees are directed to obtain an act of incorporation of an institution, with capacity to establish and maintain a free library and reading-room, and to promote such scientific and educational objects as they may more particularly designate, a corporation procured to be organized by the executors and trustees, with capacity to establish and maintain a free library and reading-room, sufficiently answers the description in the will, since the direction to promote scientific and educational objects may not only be regarded as a mere adjunct to the general purpose already expressed, but as complied with by the establishment of a free library and reading-room.

6. SAME.

The corporation having been created with power to recover and receive all property given to it by the will or transferred to it by the executors and trustees by virtue of the power conferred upon them, it is vested with all the power the executors and trustees had to promote the scientific and educational objects, and the objection that it does not answer the description in the will cannot be maintained.

7. SAME.

The period of two lives allowed for the organization of such corporation not having elapsed, the will cannot be declared void, though the corporation created may not answer the description, since a new corporation answering the description may still be created within the period.

8. SAME—DISCRETION OF EXECUTORS—EXERCISE.

A power of selection conferred upon executors and trustees by directing the promotion of such scientific and educational objects as they may designate, which has been rendered certain by the designation of a corporation with capacity to establish a free library and reading-room, cannot be objected to on the ground that it covers the whole range of scientific and educational subjects.

9. SAME.

A discretion vested in executors and trustees to bestow upon a charitable corporation, directed by the testator to be organized, the whole of his residuary estate, or so much thereof as they may deem expedient, does not render the gift invalid for uncertainty.

10. SAME—CHARITABLE TRUST—STATUTORY TRUSTS.

1 Rev. St. N. Y. 728, § 55, enumerating the express trusts which shall be allowed, applies only to real estate, and where the bulk of property disposed of in trust by a will is personal, the trust is valid, though not provided for by the statute.

11. SAME—POWERS IN TRUST.

A bequest of the residuary estate to the executors and trustees to apply the same and the proceeds thereof to the objects and purposes mentioned in the will, even if not supportable as a trust under the statute, may be upheld as a power in trust.

12. SAME—ESTATE OF EXECUTORS.

The testator, after directing his executors and trustees to convey his residuary estate to a corporation, the organization of which, a ter his death, he provided for, having devised and bequeathed all the rest, residue, and remainder of his property, after instituting the several trusts provided for, and payment of the specific legacies, to his executors and trustees to apply the proceeds to the objects and purposes mentioned in the will, the executors and trustees took an interest in the nature of an executory devise, contingent on the creation of the corporation.

Action by George H. Tilden against Andrew H. Green and others, executors and trustees, and against heirs at law and next of kin other than plaintiff, to have certain devises and bequests in the will of Samuel J. Tilden declared illegal and void.

*Vanderpoel, Green & Cuming,* (*Joseph H. Choate, L. D. Brewster,* and *Delos McCurdy,* of counsel,) for plaintiff. *Carter, Rollins & Ledyard,* (*James C. Carter, Daniel G. Rollins, George F. Comstock,* and *Smith M. Weed,* of counsel,) for defendants.

LAWRENCE, J. This action is brought by the plaintiff, claiming to be one of the heirs at law'and next of kin of the late Samuel J. Tilden, to obtain a judgment of this court that the devises and bequests embraced in the thirty-third, thirty-fourth, and thirty-fifth clauses of the will of the said Samuel J. Tilden were, at the time of the death of the testator, and are, illegal and void; and that in respect of the property therein mentioned the said Samuel J. Tilden died intestate; and that said property vested in due course of law in the plaintiff and the other heirs at law and next of kin of the deceased; and that the executors and trustees under said will may be required to account for all that portion of the estate which may remain in their hands after establishing certain other special trusts which are provided for in said will. The defendants in the action are the executors and trustees under said will; the heirs at law and next of kin of the deceased other than the plaintiff, or their personal representatives; certain legatees and devisees under the will; and the Tilden Trust, a corporation which was incorporated by an act of the legislature of this state on the 26th of March, 1887. It is alleged by the plaintiff that the provisions of the will contained in the clauses aforesaid are indefinite in their subjects and objects, invalid, and unauthorized by law, and unlawfully suspend the absolute power of alienation of said estate.

The main discussion on the argument, and in the briefs presented, was as to the validity of the provisions of the thirty-fifth clause of the will, which is as follows: "I request my said executors and trustees to obtain, as speedily as possible, from the legislature, an act of incorporation of an institution to be known as the 'Tilden Trust,' with capacity to establish and maintain a free library and reading-room in the city of New York, and to promote such scientific and educational objects as my said executors and trustees may more particularly designate. Such corporation shall have not less than five trustees, with power to fill vacancies in their number; and in case said institution shall be incorporated in a form and manner satisfactory to my said executors and trustees during the life-time of the survivor of the two lives in being upon which the trust of my general estate herein created is limited, to-wit: the lives of Ruby S. Tilden and Susie Whittlesey, I hereby authorize my said executors and trustees to organize the said corporation, designate the first trustees thereof, and convey to or apply to the use of the same the rest, residue, and remainder of all my real and personal estate not specifically disposed of by this instrument, or so much thereof as they may deem expedient; but subject, nevertheless, to the special trusts herein directed to be constituted for particular persons, and to the obligations to make and keep good the said special trusts: provided, that the said corporation shall be authorized by law to assume such obligation. But in case such institution shall not be so incorporated during the life-time of the survivors of the said Ruby S. Tilden and Susie Whittlesey, or if for any cause or reason my said executors and trustees shall deem it inexpedient to convey said rest, residue, and remainder, or any part thereof, or to apply the same, or any part thereof, to the said institution, I authorize my said executors and trustees to apply the rest, residue, and remainder of my property, real and personal, after making good the said special trusts herein directed to be constituted, or such portion thereof as they may not deem it expedient to apply to its use, to such charitable, educational, and scientific purposes as in the judgment of my said executors and trustees will render the said rest, residue, and remainder of my property most wisely and substantially beneficial to the interests of mankind."

It is contended by the plaintiff that the gift contained in that clause is fatally uncertain both as to its subject and object. He also contends that the trust cannot be supported by resorting to the English doctrine of charitable uses, or the doctrine of *cy pres,* and that neither of those doctrines has any place in the law of this state. In this contention it must be conceded that the plaintiff is right. *Holmes* v. *Mead,* 52 N. Y. 332; *Holland* v. *Alcock,* 108

N. Y. 336, 16 N. E. Rep. 305. In *Holland* v. *Alcock*, Judge RAPALLO, in concluding a most able and elaborate opinion, says: "Since the case of *Williams* v. *Williams*, [8 N. Y. 525,] decided thirty-five years ago, there has been no adjudged case in this court which supports a charitable gift on the principles enunciated by Judge DENIO in pronouncing that decision. Of course this observation applies only to the indefinite charity which the case included, and not to the gift in favor of a religious corporation. After the decision of that case, the struggle in this court for the overthrow of charitable uses began in the case of *Owens* v. *Society*, 14 N. Y. 380. The opponents of such trusts had for their justification the repeal, in 1788, in this state, of all the British statutes which upheld such trusts in England, and the substitution of a charity system maintained by our statute laws, in the form of corporate charters, containing, by legislative enactment, power to receive, hold, and administer charitable gifts of every variety known in the practice of civilized communities, and our statute of uses and trusts, defining the trusts which may lawfully be created. This statute has been held binding on the courts, although, of course, it ceases to operate when the legislature charters a corporation for a charitable purpose, with power to take and hold property in perpetuity for such purpose. From the case of *Owens* v. *Society*, 14 N. Y. 380, through the cases of *Downing* v. *Marshall*, 23 N. Y. 366; *Levy* v. *Levy*, 33 N. Y. 97; *Bascom* v. *Albertson*, 34 N. Y. 584; *Burrill* v. *Boardman*, 43 N. Y. 254; and *Holmes* v. *Mead*, 52 N. Y. 332, decided in 1873, the struggle was continued, and the announcement definitely made, in the latest of those cases, that the controversy was closed by the adoption of the principles enunciated in the said last-mentioned case. In *Williams* v. *Williams*, Judge DENIO, whose great learning and ability are universally acknowledged, maintained, as the basis of his conclusion in favor of charitable trusts as to the laws of this state, that they came to us by inheritance from our British ancestors, and as part of our common law. That particular postulate being finally overthrown, and the British statutes having been repealed at the very origin of our state government, we should be a civilized state without provision for charity if we had not enacted other laws for ourselves. But charity, as a great interest of civilization and Christianity, has suffered no loss or diminution in the change which has been made. The law has been simplified, and that is all. Instead of the huge and complex system of England, for many generations the fruitful source of litigation, we have substituted a policy which offers the widest field for enlightened benevolence. The proof of this is in the great number of charitable institutions scattered throughout the state. It is not certain that any political state or society in the world offers a better system of law for the encouragement of property limitations in favor of religion and learning; for the relief of the poor; the care of the insane, of the sick, and the maimed; and the relief of the destitute, than our system of creating organized bodies by the legislative power, and endowing them with the legal capacity to hold property which a private person or private corporation has, to receive and hold transfers of property. Under this system many doubtful and obscure questions disappear, and give place to the more simple inquiry whether the grantor or devisor of a fund designed for charity is competent to give, and whether the organized body is endowed by law with capacity to receive, and to hold and administer, the gift. In *Williams* v. *Williams*, *supra*, in maintaining a gift for pious uses to an incorporated religious society, Judge DENIO assigned the reasons which have been universally approved since that time; and they are summed up by saying that charitable limitations of property in favor of corporations competent by statute law to hold them, are valid or invalid on the same grounds as other limitations of property between natural persons, and are referable to the general system of law which governs in the ordinary transactions of mankind. From his reasoning on the other branch of the case before him, it appears that he

had not reached the conclusion established in the later cases: namely, that with us charity is found in our corporation laws, general and special, which have been extended so as to embrace the purposes heretofore known and recognized as charitable, and which are continually extending and improving so as to meet the new wants which society in its progress may develop." It follows from the doctrine enunciated by the case of *Holland* v. *Alcock*, and the cases therein cited, that the trust contained in the thirty-fifth clause of Mr. Tilden's will must be tested by the same legal rules as appertain to all other trusts, and that it must be sustained, if sustained at all, under those rules.

It appears from the evidence that the testator died on the 4th of August, 1886, leaving him surviving his sister, Mrs. Pelton; the plaintiff and his brother, the defendant; Samuel J. Tilden, Jr.; his nephews; and the defendants Henrietta A. Swan, Caroline B. Whittlesey, Ruby S. Tilden, and Susan G. Tilden, his nieces,—who were his only heirs at law and next of kin. Mrs. Pelton has died since the commencement of this action, and her daughter, the defendant Mrs. Hazard, her only next of kin and heir at law, was, by her will, which has been duly admitted to probate, appointed as her executrix. Ruby S. Tilden and Susie Whittlesey, the persons named in the said thirty-fifth clause, are still alive. On the 4th day of January, 1887, the executors and trustees under Mr. Tilden's will made an application in writing to the legislature for the incorporation of the Tilden Trust, and declared, in such application, that they elected to confine their designation of the purposes and objects of said corporation to the establishment' and maintenance of a free library and reading-room in the city of New York. Thereupon, and on the 26th day of March, 1887, the legislature passed the act, (chapter 85, of the laws of that year,) which recites that John Bigelow, Andrew H. Green, and George W. Smith, the executors and trustees, had made application for the enactment of said act, and that the said executors and trustees deem it inexpedient to designate any purposes of the corporation herein and hereby created other than the establishment and maintenance of a free library and reading-room in the city of New York, in accordance with the purposes and intentions of said testator.

By the act, Messrs. Bigelow, Green, and Smith were declared to be the permanent trustees of such corporation, in accordance with the intention of the will in that behalf; and it is provided that within 90 days from the passage of the act they should designate and appoint in writing other trustees, so that the number shall not be less than five. The act further provides that all the powers of the corporation shall be vested in the trustees, and that they shall have power to appoint a president, vice-president, secretary, and treasurer. The fifth and sixth sections of the act are as follows: "Sec. 5. The said corporation shall have, in addition to the powers now conferred by law upon all corporations as such, the capacity and power to establish and maintain a free library and reading-room in the city of New York; and for these purposes it shall have power to demand, recover, accept, and receive all such money and other property, real or personal, as is given to it by virtue of the will of Samuel J Tilden, or shall be conveyed or transferred to, or in any manner bestowed upon it, by the aforesaid executors and trustees, by virtue of the powers therein conferred upon them; and the said corporation shall have power to hold, manage, improve, dispose of, and convey all property at any time received or acquired by it in such manner as may be best calculated to carry out its objects and purposes. Sec. 6. The said corporation shall accept and receive all such money, or other property, as is given to it by the said will of Samuel J. Tilden, or shall be conveyed or transferred to, or in any manner bestowed upon it, as aforesaid, by the aforesaid executors and trustees, subject to the terms and conditions expressed in, and imposed by, the said will of Samuel J. Tilden, in respect to the gift or gifts therein and thereby made or provided for, to a corporation to be formed, and to be known

as the 'Tilden Trust;' and the said corporation shall have power to make and enter into any obligation or obligations to secure due compliance with such terms and conditions." By the seventh section it is provided, among other things, "that nothing herein contained shall affect the rights of any parties to any action now pending, or of any heir at law of said Samuel J. Tilden, deceased." After the passage of this act, the executors and trustees under the will accepted the same, and Messrs. Orr and Walker were designated and appointed as additional trustees, and the corporation was duly organized, and the officers named in the act appointed. Thereupon, Messrs. Bigelow, Green, and Smith, as such executors and trustees, on the 29th of April, 1887, conveyed all the rest, residue, and remainder of all the real and personal estate of the said Samuel J. Tilden, which, in and by the said thirty-fifth article of said will they were authorized to convey to the use of the Tilden Trust, to the said corporation.

From the foregoing statement of facts it is apparent that the executors and trustees have divested themselves, so far as it was in their power so to do, of any estate or interest which they may have had in the testator's residuary estate, under the will, and have vested that estate in the corporation known as the "Tilden Trust;" and that such divesting and vesting have been accomplished, if good in law, within the time specified by the testator, to-wit: within the lives of Ruby S. Tilden and Susie Whittlesey. The question then arises whether, discarding the English doctrine as to charitable uses and *cy pres*, and testing the thirty-fifth article of this will by the rules applicable to ordinary private trusts, those provisions are void, either by reason of the uncertainty of the object of the trust, or the subject of the trust. Before attempting to answer this question, it will be well to revert to certain rules, which, although elementary, it is necessary to keep clearly in mind in construing any will. "While it is not competent for the court to frame a will for the testator, or to import new provisions into it for the purpose of carrying out a supposed intent, yet it has been uniformly held to be their duty to give such a construction to the provisions made, especially if they are couched in inexact and ambiguous phraseology, as will effectuate the general intent of the testator as derived from an examination of the whole instrument. Thus, it has been held that words and phrases may be transposed, or even inserted or left out of a provision, if it becomes necessary to do so, in order to accomplish a clearly expressed intention of the testator." *Wager* v. *Wager*, 96 N. Y. 172, per RUGER, C. J. "Where the intention of the testator is apparent upon the whole will taken together, the court must give such a construction as will support such intent of the testator, even against strict grammatical rules. And to effectuate his evident intention, words and limitations may be transposed, supplied, or rejected." *Pond* v. *Bergh*, 10 Paige, 152, and cases cited, per WALWORTH, Ch. "If, upon a comparison of the different provisions of a will, it is found to contain dispositions which are repugnant to each other, then it is the office of judicial interpretation to preserve, if consistent with the rules of law, the paramount intention of the testator, as disclosed by the instrument, although in so doing it may defeat his purpose in some subordinate and less essential particular." *Taggart* v. *Murray*, 53 N. Y. 236, per ANDREWS, J. "The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be the legal declaration of a man's intentions, which he wills to be performed after his death. These intentions are to be collected from his words, and ought to be carried into effect, if they be consistent with law." *Smith* v. *Bell*, 6 Pet. 68, per MARSHALL, C. J. "We ought not, without absolute necessity, to let ourselves embrace the alternative of holding a devise

void for uncertainty. Where it is possible to give a meaning, we should give it, that the will of the testator may be operative; and where two or more meanings are presented for consideration, we must be well assured that there is no sort of argument in favor of one view, rather than another, before we reject the whole. It is true the heir at law shall only be disinherited by clear intention, but if there be ever so little reason in favor of one construction of a devise rather than any other, we are at least sure that this is nearer the intention of the testator than that the whole should be void and the heir let in." *Winter* v. *Perratt*, 6 Man. & G. 359, per Lord BROUGHAM. With these elementary rules in view, we may now proceed to the examination of the thirty-fifth article of the will. And, in the first place, it is most clear from the perusal of that provision that the testator did not intend that the plaintiff in this action, or any of his heirs at law, should have any portion of his residuary estate. For each of them he had made what he deemed to be a proper and sufficient provision. He had also, in the forty-third article of his will, distinctly declared that since he had made a disposition of his property according to his best judgment, in the event of any legatee or devisee instituting or taking part in any proceeding to oppose the probate of his will, or to impeach or impair, etc., any of its provisions, any devise or legacy to or for the benefit of such person is revoked, and such party shall be excluded from any participation in any share of his property. Such being the clear and emphatic will of the testator, it must, of course, be carried out, unless the disposition he has sought to make of his residuary estate cannot be supported without a violation of the laws of the state. Is there, then, any such uncertainty in the provisions of the thirty-fifth article of the will, either as to the object or the subject of the devise and bequest therein contained, as is claimed by the counsel for the plaintiff? There is, to my mind, nothing uncertain about the request at the beginning of that article to the executors and trustees to obtain, as speedily as possible, from the legislature, an act for the incorporation of the institution to be known as the "Tilden Trust." That request is positive, and amounts to a command which the executors could not refuse to obey without violating their duty. I am also of the opinion that the thirty-fifth article contains two distinct and separate alternative gifts,—the first and primary gift being to, or for the benefit of, the Tilden Trust, which it is desired by the testator shall have capacity to establish and maintain a free library and reading-room in the city of New York, and to promote such scientific and educational objects as the executors may more particularly designate; and the secondary and ulterior gift, in the event of the primary gift not taking effect, for such charitable, educational, and scientific purposes as in the judgment of the trustees will render the rest, residue, and remainder of the testator's property most widely and substantially beneficial to the interests of mankind. That it was the intention to make the Tilden Trust the first and primary object of his bounty, with respect to his residuary estate, seems clear from the phraseology which he employs. The direction to the executors and trustees to convey or apply to the use of such trust the whole or such portion of the residuary estate as they may deem expedient is entirely distinct from the provision that, if for any reason they shall deem it inexpedient to convey such residue to the trust, it shall be appropriated to such charitable, educational, and scientific purposes as in the judgment of the executors and trustees will render the same most widely beneficial to the interests of mankind.

The provision contained in the first paragraph of that article is complete and perfect in itself, and the paragraph relating to the alternative or secondary disposition of the residuary estate commences with the disjunctive conjunction "but," which word necessarily implies that the second paragraph is adversative or exceptive to the preceding paragraph. If this view is correct, even if the secondary or ulterior disposition of the residuary estate would be void for uncertainty, the first and primary disposition may stand if it is free

from uncertainty. *Schettler* v. *Smith*, 41 N. Y. 328-345, opinion by DANIELS, J.; *Manice* v. *Manice*, 43 N. Y. 303; *Kennedy* v. *Hoy*, 105 N. Y. 134, 135, 11 N. E. Rep. 390. In the case last cited, EARL, J., in delivering the opinion of the court, says: "We do not deem it important now to determine whether all the trusts for William E. Hoy and his children are valid or not, because it is sufficient for the determination of this action that the trust for the life of William is legal and valid. That is a separate trust, created by a separate paragraph in the will; is complete in itself, and is not connected with the trust intended to take effect after his death, and can be permitted to stand alone. It has been decided in many cases that where in a will some trusts are legal and others illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion were held legal and other portions illegal, or if manifest injustice would result to the beneficiaries under the will, or some of them, by holding one trust legal and the others illegal, then all the trusts must be construed together, and all must be held to be illegal, and must fall together. But when several trusts are created, and they are independent of each other, each trust complete in itself, and the legal can be separated from the illegal and upheld without doing injustice, or defeating what the testator might in the emergency be presumed to wish, the illegal trust may be cut off and the legal permitted to stand, and thus the intention of the testator be effectuated so far as the law will permit." In *Manice* v. *Manice*, *supra*, RAPALLO, J., says at page 383: "It does not seem to us, however, that the failure of these trusts or directions for accumulation during the minority of the daughter's children, and of the contingent limitations over in case of their death in infancy, will so far affect the general scheme of the testator as to render it necessary to declare the whole of the sixteenth clause void. A contingent ulterior limitation of a legal estate may be held void in such a case without impairing the validity of the other dispositions of the will. The general rule is that where the effect of such a limitation over is to abridge or defeat the prior estate, the result of such contingent limitation being held void for remoteness, is that the person whose estate would be defeasible, if such contingent limitation were valid, takes the estate discharged of the condition or limitation over. 2 Washb. Real Prop. (2d Ed.) 357; *Leonard* v. *Burr*, 18 N. Y. 103; *Church* v. *Grant*, 3 Gray, 156." See, also, *Van Vechten* v. *Van Veghten*, 8 Paige, 105; *Van Schuyver* v. *Mulford*, 59 N. Y. 426; *Knox* v. *Jones*, 47 N. Y. 389; *Wager* v. *Wager*, 96 N. Y. 164; *Savage* v. *Burnham*, 17 N. Y. 561. In *Knox* v. *Jones*, ALLEN, J., says: "Although the real and personal property are given by the same clause of the will, and upon the same trusts, they are severable, and the validity of one does not depend upon that of the other. One may be good by the *lex loci rei sitae*, while the other is bad, by the *lex domicilii*, or *vice versa;* but they are not necessarily brought into the same condemnation by reason of their connection with each other." In *Savage* v. *Burnham*, *supra*, COMSTOCK, J., says: "Can those ulterior limitations over be dropped, and the primary disposition of the estate be allowed to stand? This should be done if the intentions of the testator will be thereby effectuated rather than defeated. It is easy of demonstration that such will be the case. In solving such an inquiry we are entitled to look not only at the will, but at the external circumstances, in order to see its practical results." See, also, *Jennings* v. *Conboy*, 73 N. Y. 236; *Oxley* v. *Lane*, 35 N. Y. 340; *Woodgate* v. *Fleet*, 44 N. Y. 21; *Inglis* v. *Sailors' Snug Harbour*, 3 Pet. 99; *Weeks* v. *Cornwell*, 104 N. Y. 325, 10 N. E. Rep. 431. I am satisfied from an examination of the cases cited, and numerous others not now necessary to refer to, that the primary bequest or devise of the residuary estate can be and should be separated from the secondary and ulterior gift thereof. Is there any uncertainty about the object of the primary gift? That object was the Tilden Trust, for the incorporation of which the executors were directed to apply to the legislature. They have so applied, and

the act set up in the answers of the executors, and the Tilden Trust was passed pursuant to that application.

It cannot be contended that there is any uncertainty about the object of the primary gift because it was intended to go to a corporation which was not in being at the time of the death of the testator. The question whether an executory bequest, limited to the use of a corporation to be created within the period allowed for the vesting of future estates and interests, is valid, is no longer debatable in this state since the decision of the court of appeals in the cases of *Burrill* v. *Boardman*, 43 N. Y. 254, (the *Roosevelt Hospital Case*,) and in *Shipman* v. *Rollins*, 98 N. Y. 321. It was held in *Burrill* v. *Boardman*, that "where a testator bequeathed the residue of his estate to nine trustees for the establishment of an hospital for the reception and relief of sick and diseased persons, and directed them to apply to the legislature for a charter to incorporate the same, and in case the legislature should refuse to grant this within two years next after his death, provided two lives named in his will should continue so long, then the trustees were to pay over the same to the United States, the provisions did not violate the statute of perpetuities, but that the corporation could take only in case the charter was granted within the two lives named." It was also held "that the bequest was not void on account of the uncertainty of the beneficiary." In *Shipman* v. *Rollins*, 98 N. Y. 328, the court, following the principle laid down in *Burrill* v. *Boardman*, sustained a bequest to the "First Reformed Low Dutch Church that may be built after the year 1856, between the Fifth avenue and the East river, and Seventy-Ninth and Ninety-Fifth streets," it appearing that a church answering to the description had been built and incorporated after the death of the testator, and before the happening of the death of his wife, which was the contingency upon which the legacy was to take effect.

The question still remains whether, for any other reason, the object of the primary gift, when disconnected with the secondary or ulterior gift, can be said to be uncertain. In other words, does the Tilden Trust, as created by the act of the legislature, answer the description of that trust contained in the will? In addition to the objections already noticed, it is said that the trust does not answer that description, because the will requires that, in addition to the capacity to establish and maintain a free library and reading-room in the city of New York, the testator designed that the Tilden Trust should also be empowered to promote such scientific and educational objects as his executors may more particularly designate; and as such power or capacity is not specifically given under the act, and as the power conferred is in any event too vague and indefinite to be capable of enforcement by a court of equity, the provision in question is void.

I do not accede to this view. In the first place, the scientific and educational objects referred to in the first paragraph of the thirty-fifth article of the will are mere adjuncts to the general purpose, which is a free library and reading-room. In the second place, a well-selected library may, and without violence to language should, be construed to embrace scientific and educational objects, and, therefore, the designation of the library and reading-room by the executors, and its incorporation by the legislature, confer upon the trust the capacity to promote such scientific and educational objects as the executors and trustees may designate, and this conforms to the terms of the will. In the third place, as the legislature has, on the application of the executors, incorporated the Tilden Trust by an act which recites in its preamble that the application is made by the executors for its passage in pursuance of the provisions of the will of Mr. Tilden, and as by the fifth section of the act the corporation is empowered to demand, recover, accept, and receive all such money and other property, real or personal, as is given to it by virtue of the will of Samuel J. Tilden, or shall be conveyed or transferred to, or in any manner bestowed upon, it by the executors and trustees by virtue of the powers therein

conferred upon them, I think that the corporation has thereby become vested with all the capacity which, by the will, the executors possessed in relation to the designation of scientific and educational objects.

If it be further said that the power of selection conferred by this paragraph of the will is indefinite or uncertain, because it embraces the whole range of scientific and educational subjects, the answer seems to be that the maxim *id certum est quod certum reddi potest* applies as well to wills as to deeds; and that the executors, having elected to apply for the incorporation of a trust, with the capacity to establish and maintain a free library and reading-room, have determined that the residuary estate conveyed by them should be devoted to the support of such scientific and educational objects as naturally appertain to a library and reading-room.

Before leaving this branch of the subject it will be necessary to advert to the cases upon which the counsel for the plaintiff rely, as establishing their position that the primary gift contained in the thirty-fifth paragraph of the testator's will is void. In the case of *Prichard* v. *Thompson*, 95 N. Y. 76, it was held that where a gift to a charitable use is so indefinite as to be incapable of execution by a judicial decree, it is invalid. There, Thompson, the testator, gave to his executors a specified sum in trust, to distribute the same among such incorporated societies, organized under the laws of the state of New York or the state of Maryland, having lawful authority to receive and hold funds upon permanent trust for charitable or educational uses, as said executors or the survivors of them might select, and in such sums as they should determine; and it was held that said clause was void because of indefiniteness and uncertainty in the designation of the recipients of the testator's bounty. The decision was based upon the ground that the paragraph in question would embrace all institutions of charity of every description, and that such a disposition of the testator's estate it would be impossible for the court to carry out. No such difficulty presents itself in this case. The Tilden Trust is a separate individual body, incorporated by law, and capable of receiving such of the bounty of the testator as the executors may see fit or deem expedient to convey to it, under the terms of the will. In *Holland* v. *Alcock*, 108 N. Y.312, 16 N. E. Rep. 305, it was held that the absence of a defined beneficiary entitled to enforce its execution, is, as a general rule, fatal to the validity of a testamentary trust. That the power given to the executors to select the beneficiary does not obviate the objection unless the persons or corporations from among whom the selection is to be made are so defined and limited that a court of equity would have power to enforce the execution of the trust, or, in default of execution, to decree an equal distribution among all the beneficiaries. In that case, "the will of G. bequeathed his residuary estate, which consisted exclusively of personalty, to his executors, in trust, for the purposes expressed therein, as follows: 'To be applied by them for the purpose of having prayers offered in a Roman Catholic church, to be by them selected, for the repose of my soul, and the souls of my family, and also the souls of all others who may be in purgatory;' and it was held that the trust so attempted to be created was invalid, and that as to such residuary estate the testator died intestate, and the next of kin of the testator were entitled thereto, as there is no beneficiary in existence, or to come into existence, who is interested in, or can demand, the execution of the trust; that, considering the trust is to pay over the fund to such Roman Catholic church as the executors might select (as to which *quære*,) the objection of indefiniteness in the beneficiary would not be removed." The court distinguished the case from that of *Power* v. *Cassidy*, 79 N. Y. 602, where the will was upheld because the power of selection was confined to Roman Catholic churches in the city of New York, whereas, in the *Case of Holland*, the class from which the selection was to be made embraced all the Roman Catholic churches in the world. The case of *Burrill* v. *Boardman*, 43 N. Y. 254, is referred to in the opinion in that case as one in

which the English doctrine of charitable uses is alluded to or discussed, but there is nothing in the opinion in the *Holland Case*, as I read it, which intimates that the case of *Burrill* v. *Boardman* was not properly decided; and while, in the *Holland Case*, the English doctrine of charitable uses and of *cy pres* is declared not to have existed in this state since the statute of 1788, it is, as we have already seen, distinctly stated by the court that: "Under this system (*i. e.*, the system of corporations vested with power to take and hold property for educational, religious, and other charitable and benevolent purposes) many doubtful and obscure questions disappear and give place to the more simple inquiry whether the grantor or devisor of a fund, designed for charity, is competent to give, and whether the organized body is endowed by law with capacity to receive, and to hold and administer, the gift." The case is, therefore, not an authority for the position that the primary gift contained in the thirty-fifth clause of Mr. Tilden's will is void for the uncertainty of the person or object upon which the gift is to be bestowed. That object is the Tilden Trust. There is no class, large or small, from which the executors are to make the selection. If they deem it expedient to give anything under the terms of the will for the purposes of the primary gift, the gift must be to the Tilden Trust, endowed with the capacities which are specified in the will.

It is further urged that the primary gift is void because it is entirely within the discretion of the executors whether they will give anything or nothing to the Tilden Trust. The language is: "I hereby authorize my said executors and trustees to organize the said corporation, designate the first trustees thereof, and to convey to or apply to the use of the same the rest, residue, and remainder of all my real and personal estate not specifically disposed of by this instrument, or so much thereof as they may deem expedient, but subject, nevertheless, to the special trusts herein directed to be constituted for particular persons, and to the obligations to make and keep good the said special trusts; provided that the said corporation shall be authorized by law to assume such obligation."

As we have seen, the case of *Burrill* v. *Boardman* is an authority for the proposition that a gift is not invalidated by reason of the fact that the corporate body in whose favor it is made is not in existence at the time of the testator's death. In that case the bequest was upheld as a good executory bequest, it being limited to take effect within the period allowed for the vesting of future estates. There the testator gave "the residue of his personal estate, including lapsed legacies, etc., in trust, to the successive presidents of five 'certain incorporations,' naming them, and to four private individuals, naming them, 'and to the survivor and survivors of them, for the establishment in the city of New York of an hospital for the reception and relief of sick and diseased persons, and for its permanent endowment.'" He then directed that the institution should be managed by the nine trustees thus appointed, and in case of any vacancy in the individual trustees it should be filled by the official trustees. After some further directions about the management of the funds, the will contains the following clauses: "I direct my trustees promptly to apply to the legislature of this state for proper acts to incorporate, secure, and perpetuate said hospital. And should such legislature for two years next after my decease [provided the youngest of my said individual trustees living at my decease, and my said nephew, or either of them, shall so long live,] refuse or neglect to grant a liberal charter for the safe organization, conduct, and perpetuity of such hospital establishment, in accordance with the provisions of my will, I, in that event, direct my trustees, from time to time, to pay over the above bequests that may come into their possession under my will to the government of the United States of America." The court said: "The reasonable interpretation of the will is, that the testator intended to limit a contingent future interest, in the nature of an executory devise, the contingency depending upon the creation of a corporation by the legislature capable

of taking within the period allowed for the suspension of ownership of property by the statute against perpetuities. The language might have been more explicit, but avoiding technical criticisms, and observing the rule to find a lawful instead of an unlawful intent, and considering all the provisions of the will, the construction indicated seems the most natural and accurate."

There is a distinction between that case and the case at bar in this, that in the *Roosevelt Case*, if the hospital was incorporated within two lives in being, the residue of the testator's estate went immediately to the corporation; while in the case at bar, all, or only so much of the residuary estate of the testator goes to the Tilden Trust as the executors may determine to be expedient. Does this difference in the two cases render the decision in the *Roosevelt Hospital Case* inapplicable to this case? Does the discretion which is vested in the executors render the gift invalid for uncertainty? I am not prepared so to hold, and do not find that counsel have referred to any authority which determines that the provision in the will is void because such a discretion is vested in an executor. It must be borne in mind that we are not now considering the question whether the gift may not become ineffectual because of the neglect of the executors to exercise their discretion, but whether it is absolutely void because they are vested with such discretion. In this connection it should also be borne in mind that, if the vesting of a discretion in the executor is in and of itself fatal to the gift, and causes the property sought to be bequeathed to descend to the next of kin and heirs at law, the gift in *Burrill* v. *Boardman* would have been invalid because it was dependent upon the legislature granting a liberal charter. Who in that case was to determine whether the charter was liberal or illiberal? Clearly the trustees. (See provisions of the will above quoted.) If, then, the primary gift is not uncertain because of the discretion vested in the executors, is it void for uncertainty because no specific sum is mentioned in the will? The executors, it will be seen, can give the whole of the residuary estate, or such portion as they may deem expedient. This is no more indefinite than the bequest in *Power* v. *Cassidy*, 79 N. Y. 602, which was sustained. There, the testator left one-third of his residuary estate to be divided by his executors among such Roman Catholic churches, institutions, schools, or charities in the city of New York as the majority of his executors should decide, and in such proportions as they should think proper. Here, the testator, in effect, leaves the whole of his residuary estate to the Tilden Trust, or so much thereof as his executors may deem expedient. Numerous authorities, both from the English and American courts, have been cited by the defendants' counsel to sustain their proposition that the bequest and devise in question cannot be assailed for indefiniteness in regard to its subject, but I do not deem it necessary to go over them in detail. It seems to me that the two cases from our court of appeals are sufficient in principle to sustain the primary gift contained in the will, so far as it is assailed on the ground of the uncertainty of its subject.

It is urged by the learned counsel for the plaintiff that the provision in question is void because it creates a trust which is not one of the express trusts provided for by section 55 of the statute as to uses and trusts. 1 Rev. St. pp. 728, 729. The bulk of the property which was in the hands of the executors at the time of the conveyance to the Tilden Trust was personal property, and the provisions of the Revised Statutes which are cited only apply to real estate. *Everitt* v. *Everitt*, 29 N. Y. 39; *Savage* v. *Burnham*, 17 N. Y. 571; *Kane* v. *Gott*, 24 Wend. 641. The point that the gift of the whole of the residuary estate to a future corporation is in conflict with the laws of this state, establishing a uniform, consistent, and well-defined mortmain policy, I do not regard as well taken. If sound, it would seem to deprive a testator of the right to make a gift of his property to a corporation to be created by legislative act after his death,—a right which is upheld and recognized by the cases of *Burrill* v. *Boardman* and *Shipman* v. *Rollins, supra.* Nor can

I agree with the plaintiff's counsel in the position that the provisions of the will fall within the restrictions of the statute relating to perpetuities. The testator has provided that the institution to be known as the "Tilden Trust" shall be incorporated in "form and manner satisfactory to my said executors and trustees, during the life-time of the survivor of the two lives in being upon which the trust of my general estate herein created is limited, etc., to-wit: the lives of Ruby S. Tilden and Susie Whittlesey, etc." It is very clear from this that the testator had in mind the provisions of the Revised Statutes in respect to the suspension of the power of alienation, and that he intended that his executors should comply with those provisions.

It is argued that the executors and trustees might, by a possibility, omit to procure the incorporation within the period of the two lives specified, and that then, under the ulterior gift over, they would hold his estate for an indefinite and unlimited period of time to the use of mankind. To this position I cannot give my assent. CHURCH, C. J., in speaking of a similar objection in *Burrill* v. *Boardman*, says: "It is objected that the provisions in question violate the statute against perpetuities. By this statute, the title to personal property must vest absolutely within two lives in being. A possibility of suspension beyond that for any time, however short, is fatal. *Schettler* v. *Smith*, 41 N. Y. 328. It is urged that such suspension is possible, because the legislature might pass the charter on the last day of the existence of the last of the two lives; that it would not become operative until accepted by the trustees; and that such acceptance would take time, during which the title could not vest. From the language employed the testator must have intended that the charter would be obtained and become operative within the two lives. The trustees were to apply for acts to incorporate, secure, and perpetuate the hospital, and the legislature was to grant a charter for its safe organization, conduct, and perpetuity within the specified period. This language implies that the testator intended a complete corporate existence. Besides, the charter to be granted could only be the one applied for, in which case no formal acceptance is necessary. Ang. & A. Corp. § 69." Again, if the ulterior gift is void for uncertainty, the duration of the suspension of the power of alienation is necessarily confined to the lives of Ruby S. Tilden and Susie Whittlesey. Furthermore, in construing this will, we must presume that the testator intended to make a legal disposition of his estate, rather than a void or illegal one; and it is the duty of the court to give to the language used by the testator such a construction as will make the instrument or limitation legal or valid, if it can be done in harmony with well-settled rules, with the manifest intent, and adjudicated cases, rather than such construction as will render them illegal and nugatory. *Du Bois* v. *Ray*, 35 N. Y. 162; *Munice* v *Manice*, 43 N. Y. 362; *Tucker* v *Tucker*, 5 N. Y. 408; *Post* v. *Hover*, 33 N. Y. 601. Having reached the conclusion that the primary gift, contained in the thirty-fifth paragraph of the will, is not void either as to uncertainty of object or subject; that it is not in contravention of the statute against perpetuities; and that the provisions of the Revised Statutes in relation to express trusts as to lands do not apply in any event as to the personal estate,—there are some remaining questions to be considered. Assuming the authorities to establish that the right to give to a corporation to be created after the death of the testator exists, and that the gift on such incorporation becomes effectual, the question presents itself: What is the estate or interest which the executors and trustees hold in the property devised and bequeathed to them by the will? Great stress has been laid by counsel upon the thirty-ninth article of the will, which is as follows: "I hereby devise and bequeath to my said executors and trustees, and to their successors in the trust hereby created, and to the survivors and survivor of them, all the rest, residue, and remainder of all the property, real and personal, of whatever name or nature, and wheresoever situated, of which I

may be seized or possessed, or to which I may be entitled, at the time of my decease, which may remain after instituting the several trusts for the benefit of specific persons; and after making provision for the specific bequests and objects as herein directed, to have and to hold the same unto my said executors and trustees, and to their successors in the trust hereby created, and the survivors and survivor of them, in trust, to possess, hold, manage, and take care of the same during a period not exceeding two lives in being; that is to say, the lives of my niece, Ruby S. Tilden, and my grandniece, Susie Whittlesey, and until the decease of the survivor of the said two persons; and, after deducting all necessary and proper expenses, to apply the same, and the proceeds thereof, to the objects and purposes mentioned in this my will." This provision must be read in connection with the other provisions of the will, and the intention of the testator gathered from the whole instrument. See cases above cited.

I am strongly inclined to the opinion that, under *Burrill* v. *Boardman,* it should be held that the testator intended to limit a contingent future interest in the nature of an executory devise, the contingency depending upon the creation of a corporation by the legislature, capable of taking within the period allowed for the suspension of ownership of property by the statute against perpetuities. 43 N. Y. 259, per CHURCH, C. J. If this be not the true interpretation of the will, I think that, even although the trust sought to be reposed in the executors and trustees cannot be supported as an express trust as to real estate, under the Revised Statutes, the power conferred by the will in respect to the residuary estate is good as a power in trust, the beneficiary, the Tilden Trust, being competent to take under the act creating it. *Downing* v. *Marshall,* 23 N. Y. 377. In that case COMSTOCK, C. J., after stating that the impression which has prevailed to some extent that the fifty-fifth section of 1 Rev. St. p. 728, had taken from owners the power of imposing upon their estates any limitations having the general characteristics of a trust, except such as are thus enumerated, goes on to say: "That this impression is not well founded will appear on a brief consideration of the subject." Then, after a summary of the history of uses and trusts, and stating the effect of the Revision of 1830 upon our former law, he concludes: "And thus, as the old statute of uses, which was intended to abolish passive trusts, left the widest field for the creation of active ones, so our Revision in abrogating all active trusts, except the few particularly specified, has reanimated them under the name of powers which are left without restriction, provided the purpose of the limitation or power be in itself a lawful one. The statute, it is true, enunciates a code on the subject of powers, also, but it makes no attempt to enumerate or define the lawful occasion for creating a power." See, also, *Dock Co.* v. *Stillman,* 30 N. Y. 175; *Konvalinka* v. *Schlegel,* 104 N. Y. 125, 9 N. E. Rep. 868; *Cooke* v. *Platt,* 98 N. Y. 35–38.

If there is anything in the provisions of the thirty-ninth article of the will which seems to be inconsistent with the thirty-fifth article, or to conflict with the view that the testator intended to give to his executors an estate supportable as an executory devise, or with the view that the devise and bequest contained in the last-mentioned article can be supported as a power in trust, after separating the primary from the uncertain ulterior gift, the cases heretofore cited establish, I think, that the actual intention of the testator is to be arrived at by an examination of the whole will. And as it appears to me that the intention of the testator, as disclosed by the whole will, was that the plaintiff and the other heirs at law and next of kin should receive nothing beyond the provisions made for each of them in other portions of the will, and should be excluded from the enjoyment of any part of his residuary estate; and as the carrying out of that intention can be effectuated without violating the rules of law, the provisions of articles thirty-five and thirty-nine should be harmonized, and the court refuse to declare that the testator died intestate as

to his residuary estate. *Pond* v. *Bergh*, 10 Paige, 140, 141, 152; *Du Bois* v. *Ray*, 35 N. Y. 162, 166, 167; *Wager* v. *Wager*, 96 N. Y. 166, 167; *Murdock* v. *Ward*, 67 N. Y. 392. Furthermore, if the case is not free from doubt the benefit of that doubt should be given in support of the will, under the familiar rule that the court should not declare that a testator died intestate, in respect to property which he has sought to transmit by will, unless compelled to do so. Again, even if the Tilden Trust, as constituted by the legislature, is not the corporation which the testator designed that his executors should invoke the legislature to create, the court should not, on that account, at this time, adjudge that the provisions of the will are void; as it is possible that within the two lives designated in the will, a corporation, fully answering the testator's views, may be called into being, or the powers of the present corporation so extended as to meet the objections urged by the plaintiff's counsel.

I have examined the authorities cited in the elaborate briefs of counsel with attentive care, and have derived instruction from their perusal; but as a result of my examination of those authorities and briefs, and of the whole case, I feel obliged to say that the attack upon the validity of the provisions of the will cannot be successfully sustained. No special argument has been made against the clauses of the will relating to the support and maintenance of libraries in Yonkers and New Lebanon, and therefore I have not considered them in this opinion. The judgment to be entered in accordance with the views expressed in this opinion will be settled on notice.